## Ex parte Jordan.

Subsequently to a decree *pro confesso,* additional parties were, by leave of the court, permitted to intervene as defendants, in the same manner and with like effect as if named in the original and supplemental bills. The case was then referred to a master, who computed, ascertained, and reported the amount of indebtedness, &c.; whereupon the court, after finding certain facts and overruling the exceptions of such intervening parties to his report, passed a final decree, but denied their right to an appeal therefrom. *Held,* 1. That they had that right. 2. That, to enforce it, a *mandamus* lies from this court.

APPLICATION for a *mandamus* to the Circuit Court of the United States for the Southern District of New York, to compel the allowance of an appeal from its decision.

The New York, Oswego, and Midland Railroad Company,

July 1, 1869, executed a mortgage on its railroad, &c., to secure an issue of bonds amounting to $8,000,000. Stevens, Opdyke, & Hewitt, trustees under this mortgage, on or about Nov. 1, 1873, commenced a suit for its foreclosure in the Circuit Court of the United States for the Southern District of New York. To this suit the railroad company, Delos De-Wolf, trustee, William H. Macy, trustee, and the Mercantile Trust Company, trustee, were originally the only defendants. Receivers were appointed Nov. 18, 1873; and on the same day, for the purpose of providing money to pay debts owing to employés, and for certain other specified objects, the receivers were authorized to issue from time to time certificates of indebtedness to an amount not exceeding in the aggregate $1,425,000, bearing interest at the rate of seven per cent per annum, and, unless previously discharged, to be paid out of the moneys realized upon the foreclosure equally with any other liabilities incurred by them in the administration of their receivership. Dec. 23, 1873, a further issue of like certificates was authorized, for the purchase of equipment and the payment of rental on leased lines.

In due time an order was regularly entered, taking the bill as confessed. The receivers from time to time filed their accounts; and these were referred to a master, who reported thereon April 29, 1875. Upon the filing of this report the following direction was given by the circuit judge: "The report may be confirmed, but at present I think no further order should be entered."

June 29, 1875, Conrad N. Jordan, Henry Amy, Edward Livingston, Frederick P. James, John P. Crosby, and Nathaniel A. Cowdrey, holders, or the representatives of holders, of bonds secured by the mortgage, filed a petition for leave to intervene in the prosecution or defence of the suit, for the protection of the interests they represented. Upon this petition the following order was made, June 30, 1875: —

"It is hereby ordered that the said petitioners have leave, and leave is hereby granted to them, to intervene in this suit for their own interests, and the interests of those whom they represent, and to that end to appear in the suit within three days, as defendants, in the same manner and with like effect as if they were named in

the original and supplemental bills as defendants having or claiming an interest: *Provided*, that said petitioners all appear by the same solicitor or solicitors. This order to be without prejudice to proceedings already had; but this is not to be construed as depriving the petitioners of leave to apply for a rehearing or review of any order heretofore made, upon due notice to the parties interested."

About the same time a similar petition was presented by John E. Williams and Theodore Houston, and they were admitted upon the same terms.

July 13, 1875, the cause coming on for hearing, the complainants submitted a proposed form of final decree, and the defendants' various amendments thereto. The hearing was postponed until Aug. 4, when a further postponement took place until Sept. 15, and the master was directed "to compute, ascertain, and report to the court, on or before the eleventh day of September, 1875," among other things, "the amount of certificates of indebtedness and notes issued by the receivers under the authority of the court, classifying them so as to show the dates, of and authority for their issue, and the purpose of such issues respectively, and to whom issued by the receivers, and the aggregate amount of principal due thereon, with interest computed to Sept. 15, 1875; ..... also what leases have been made to the mortgagor or receivers, and the dates and terms thereof; also what rents have accrued under the terms of such leases and have not been paid."

The time for taking proof by the master having been extended, his report was not made until Nov. 13. To this report exceptions were filed by Jordan, James, Houston, Williams, Livingston, Amy, and Crosby, Jan. 5, 1876. These exceptions related to the amounts allowed for outstanding receivers' certificates, and to different railroad companies on account of their leases.

The cause at last came on for final hearing, Oct. 2, 1876, among other things, upon the exceptions to the master's report " filed by defendants Conrad N. Jordan and others on the 5th of January, 1876," and after argument, among others, by " Mr. F. N. Bangs, of counsel for the defendants, Conrad N. Jordan, Henry Amy, John P. Crosby, Edward Livingston, Frederick P. James, and Nathaniel A. Cowdrey," a decree was entered

finding the amount due upon certain detached coupons, upon the bonds and attached coupons, and upon the receivers' certificates, and directing the mortgaged property to be sold, and the proceeds applied to the payment of the sums so found due.

The present petitioners, claiming to be aggrieved by certain specified orders made in the cause previous to their admission as defendants, and also by so much of the final decree as directs the payment of certain designated coupons, and of the receivers' certificates, and by certain other provisions of the decree which are specially stated, on the second day of October, 1876, in open court, prayed an appeal to this court " from so much and such parts of the decree " as they claim to be aggrieved by. This was denied, for the reason that the court was of the opinion " that the said defendants cannot appeal from the decree, because the bill of complaint herein and the supplemental bill have been taken as confessed as against them."

Afterwards the petitioners again applied to the circuit judge for the allowance of an appeal from the same parts of the decree, and tendered good and sufficient security to perfect the appeal; but it was refused.

Thereupon this application was made for a *mandamus* directing the Circuit Court to allow the appeal as asked for.

*Mr. F. N. Bangs* for the petitioners.

*Mr. William M. Evarts, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

We think that an appeal should have been allowed in this case. The petitioners were defendants in the suit when the final decree was rendered. They were directly interested in what was then decided. The allowance of an appeal under sect. 692, Rev. Stat., follows of course, if prayed for by one who has the right to it. The language of the statute is, " *shall* be allowed," which means " *must* be allowed," when asked for by one who stands in such relation to the cause that he can demand it. The question upon such an application is not what will be gained by an appeal, but whether the party asking it can appeal at all.

It is true that the petitioners were not parties to the suit until after the bill was taken as confessed; but it is clear that a decree *pro confesso* did not end the case, because before the final decree was rendered it was found necessary to have a reference to a master, " to compute, ascertain, and report." Before the master could comply with this order proof had to be taken; and the original time given him to report was extended for that purpose. When this reference was made, the petitioners were defendants and actors in respect to the litigation. They certainly had the right to contend before the master, and to except to his report. This they did; and their exceptions were overruled. Even the report of the master did not put the case in a condition for a final decree. The amount due upon the bonds and coupons had still to be ascertained. That was done by the court, and stated in the decree. Against these findings, certainly, the petitioners were in a condition to contend, and, if to contend below, to appeal here. It will be time enough to consider what relief they can have under their appeal when the case comes up.

While complaint is made of interlocutory orders entered in the progress of the cause, the appeal lies and was asked only from the final decree. Whatever comes here comes through such an appeal. When the case gets here, the petitioners may not be allowed to go behind orders actually made by the court as to the administration of the property before they were admitted to defend, but the case was certainly open to them, when they came in, as to all other matters involved.

The exceptions of the petitioners were not filed until after the expiration of one month from the time of filing the master's report. Under equity rule 83 the complainants could have insisted upon a confirmation of the report by reason of this default at the next rule-day after it occurred. But they did not see fit to do so. The exceptions were received out of time without objection, and acted upon by the court. This was a waiver of the default.

A writ of *mandamus* will be issued directing the Circuit Court to allow the appeal asked for, as of Oct. 2, 1876, and it is so                                    *Ordered.*