## UNITED STATES EX REL. BEAL *v.* COX.

APPEAL BONDS, APPROVAL OF; MANDAMUS.

1. Where a reasonable doubt is raised as to the genuineness of the signature of one of two appellants on an appeal bond, the justice of the lower court to whom the bond is presented for approval has the right to refuse to approve it.

2. It then becomes the duty of the appellants, under such circumstances, to prove the signature, and they are entitled to an opportunity to do so. If a demand for such an opportunity be refused by the court, *mandamus* will lie to compel such a hearing.

3. But if no such demand be made and after the lapse of the time within which the bond could, under the rules, be filed, it is again presented for approval, and the justice declines to approve it, *mandamus* will not lie to compel him to approve it *nunc pro tunc.*

Original. No. 62. Submitted February 23, 1899. Decided March 8, 1899.

HEARING on a petition for a writ of *mandamus* to compel an associate justice of the Supreme Court of the District of Columbia to approve an appeal bond, and an answer by the respondent to a rule to show cause why the writ should not issue. *Petition dismissed.*

The COURT in its opinion stated the case as follows:

The relators, John H. Beal and Ulysses R. Burton, pray for a writ of *mandamus* to compel the approval of an appeal bond by Hon. Walter S. Cox, one of the justices of the Supreme Court of the District of Columbia.

Petitioners allege that they are defendants in a suit in equity, No. 17,854, in the Supreme Court of the District, wherein one Narcissa F. Beale is complainant.

That John H. Beal resides in the District of Columbia and Ulysses R. Burton in the State of Georgia.

That said suit was heard before Justice Cox on November

22, 1898, and resulted in a decree for the complainant ordering the sale of certain property described in the bill. That defendants entered a notice of appeal and procured an extension of the time within which the appeal bond was required to be filed.

That on December 13, 1898, and within the time, defendants presented a bond for approval executed by the defendants, with Samuel Bryant as surety.

That the sufficiency of the surety was conceded, but objection was made that the signature of Ulysses R. Burton was a forgery. That no evidence was introduced of forgery, other than the exhibition of a letter from said Burton, the signature of which appeared to be different from that to the bond. That approval of the bond was refused. That appellant Beal then wrote to Burton and received a letter in reply, with a statement endorsed thereon, and signed by one G. W. Daniels, to the effect that the bond had been signed by Burton and that the letter returned therewith had been written by Burton and his name signed thereto by Daniels at Burton's request. That on January 23, 1899, this letter and endorsed statement were exhibited to respondent with the bond and he was requested to then approve the bond as of the date of its former offer. That this was refused. The bond and the said letter are attached as exhibits to the petition. Relators aver that they have good ground for appeal from the decree; that the justice should not have rejected the bond on the evidence before him on December 13, 1898; and that he should also have approved it *nunc pro tunc* when presented on January 23, 1899.

The prayer is for a *mandamus* to compel him to approve the bond at once, or to hear evidence on the question of the genuineness of the signature, and, if forgery shall not be proved, to then approve the same, *nunc pro tunc.*

To the rule to show cause, issued on the foregoing petition, the respondent made the following return:

"1. One of the principal defendants in the cause to which

14 Ct. App.—25

this proceeding refers, appears to be one Ulysses R. Burton, of Georgia, claiming to be heir of his deceased sister, Mrs. Beal, who was the wife of the defendant Beal. The latter neither has nor claims title in the property in question, but claims to be occupying it with the assent of the said Burton.

"2. Although the said Burton answered the bill, or at least there is an answer purporting to be signed by him, the counsel for the relators entered their appearance for Beal only as will appear by reference to a copy of docket in said equity cause No. 17,854, hereto annexed and made part of this answer.

"3. After the decree for sale, a supersedeas appeal bond was offered for approval, purporting to be signed by the said defendants, Burton and Beal, and by one Bryant, of Washington, as surety. Objection was made to it by the counsel for the complainant, as not bearing the genuine signature of the said Burton.

"4. Upon a comparison of the signature of the Burton to the bond with the signature of Ulysses S. Burton to his sworn answer, it was manifest that they were entirely different, as will appear from a comparison.

"Again, there was exhibited a letter purporting to be from defendant Burton, accompanying the bond, and the signatures of these two are entirely different, as will also appear by reference to said letter.

"Again, the Burton signing said letter gives his name, apparently, as W. R. Burton and says that the name in the beginning of the bond ought to be W. R. Burton, and accordingly signs the bond in that name, although the Burton who is made defendant signed the sworn answer as Ulysses S. Burton, and defendant Beal, in his sworn answer, gives that as the name of one of Mrs. Beal's brothers. Never before did anyone appear in connection with the case under the name of W. R. Burton or U. R. Burton.

"5. There was no explanation of these discrepancies, and

Mr. Richardson, counsel for defense, admitted himself unable to give any, and manifested no little surprise over the dissimilarity in the handwriting, and so forth.

"Upon this showing, I did not believe that the bond bore the genuine signature of the defendant, Ulysses S. Burton, and declined to approve it on the grounds: First, I suspected that the defendant Burton was not really prosecuting the appeal, but someone else was making use of his name in the interest of Beal.

"Secondly, I thought that Bryant, who had been induced by Beal to sign the bond as surety, could not be held liable on the bond if it was not executed by the principal, the complainant having notice of the fact and not being misled by the surety.

"Afterwards, and long after the time allowed for perfecting the appeal, and after the term of the court had expired, Mr. Davis moved to have the bond approved *nunc pro tunc,* and, in support of his motion, exhibited a letter purporting to be signed by Ulysses R. Burton, in which the writer says that he did sign the bond, but the letter accompanying it was written at his dictation, by one Daniel, and at the foot of the letter there is a note purporting to be signed by Daniel, in which he says that he saw Ulysses R. Burton sign the bond.

"The signature of Burton to this letter is totally unlike the signature to the bond, and I should consider the statements in the letter untrue, if it were necessary for me to decide the question of fact.

"But because a proper bond was not submitted within the time prescribed by the rules, I consider this motion as equivalent to an offer of a new bond after the period allowed therefor had expired, and did not think I had any power to accept it, even were it a good bond."

Certified copies of the docket entries referred to and of the two orders of December 1, and December 8, extending the time for filing the appeal bond, are filed with the return as

exhibits thereto. Petitioners have demurred to the return as insufficient in law.

Without objection, an intervening petition has been filed by Narcissa F. Beale, the complainant in the case below. This gives an elaborate history of the proceedings in the matter of the bond which need not be recited; for the decision must turn upon the sufficiency of the respondent's return. It may be added, however, that the original letter. of Ulysses R. Burton, stated by Daniels to have been written and signed by him for Burton, is attached to the intervenor's petition.

*Mr. D. W. Baker* for the petitioner.

*Mr. Creed M. Fulton* for the respondent.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. Any party to an action or suit, originally instituted in the Supreme Court of the District of Columbia, who has been aggrieved by any final order, judgment, or decree therein, has the right to appeal to this court upon compliance with the rules regulating the exercise of the right, that have been prescribed in accordance with the authority of the Act of Congress creating the Court of Appeals. "The question upon such an application is not, what will be gained by an appeal, but whether the party asking it can appeal at all." *Ex parte Jordan,* 94 U. S. 248, 251.

Where a party has a clear right to an appeal that has been refused him by the trial court he may resort to the appellate court for a *mandamus* to compel its enforcement. *Ex parte Cutting,* 94 U. S. 14, 20. It was said in that case, wherein the writ was refused: "The office of *mandamus* is to compel the performance of a plain and positive duty. It is issued upon the application of one who has a clear right to demand such a performance, and who has no other adequate remedy."

Now, accepting the facts stated in the return as absolutely

true: Was it the plain and positive duty of the respondent to approve and permit to be filed, the bond, when offered on December 13, 1898? By the provisions of Rule 10 of this court one of the justices of the Supreme Court of the District of Columbia must approve the bond before the appeal can be perfected. If the bond appear to be regular in form and execution and the surety sufficient, it is his duty to approve it without regard to captious objections that may be raised on behalf of an opposing party.

Such objections ought to be discountenanced. The right of appeal is a valuable one, and its exercise ought not to be obstructed save upon substantial grounds relating to the observance of the necessary steps provided therefor, and the proper protection of the rights of the appellee. The bond is not required to be executed in the presence of the justice who may be called upon to approve it; nor is any form of attestation required. Principals and sureties may be wholly unknown to him, and, as in this case, a principal may reside in a distant State. At the same time, he ought to have the power at his discretion to enquire into the genuineness of the signatures to the bond as well as of the sufficiency of the surety.

When satisfied of the sufficiency of the surety, and there is nothing to cast a reasonable doubt upon the genuineness of the signatures of either principal or surety, the bond offered by counsel ought to be approved without requiring affirmative proof of the act of execution. And this seems to be the prevailing practice. But if there be such doubt raised by facts and circumstances observed by or made known to the justice, it would be his duty, as well as his right to make inquiry; and action founded upon such inquiry would involve an exercise of discretion that could not be controlled by *mandamus.*

We can not agree with the contention of the relators that, notwithstanding a reasonable doubt may be raised in respect of the execution of the bond, it is the duty of the justice,

nevertheless, to approve the bond unless the fact of its forgery shall have been affirmatively shown. In one of the cases cited by relators upon another point, it is said: "If there is doubt as to the genuineness of the signatures, he (the justice) may no doubt require proof that the bond was actually signed by the persons whose names appear thereon." *State* v. *Clark,* 24 Neb. 318, 320. There would seem to be no other logical conclusion. One presenting a bond for acceptance affirms its genuineness, and when that is questioned ought to be required to establish it.

As we have said before, if there be nothing in the surrounding circumstances to cast doubt upon its execution, the justice ought not to require proof of genuineness upon the mere suggestion of the opposing party. Under such circumstances it would be the duty of the opposing party to make some substantial showing to justify a harassing investigation. But, having performed this duty, it would be most unreasonable to compel him to assume the burden of disproving the genuineness of the signatures.

The question, whether, even if the bond was not signed by Burton, the protection of the appellee would be complete, because the surety would be bound by his own signature and act of delivery, need not be considered. Whether he would be estopped to impeach the genuineness of the principal's signature, and to deny his own liability, in an action upon the bond, is wholly irrelevant. There could be no excuse, much less justification, for the acceptance and approval of any bond, a single signature to which may be believed to be spurious.

When, therefore, in this case the justice expressed his doubt of the genuineness of the Burton signature, it became the duty of the appellants to prove it; and they were entitled to an opportunity to make such proof. Had they made a demand for such opportunity, it would' have been the plain duty of the justice to give them a reasonable time to produce the proof, and to indicate some reasonable man-

ner in which it might be presented. If satisfied upon such hearing of the genuineness of the signature, a positive duty would arise to approve the bond *nunc pro tunc.*

If such application be denied a hearing would be compelled by *mandamus.*

As shown by the return, no such application was made in this case when the approval of the bond was refused on December 13, 1898, on the ground that the respondent "did not believe that the bond bore the genuine signature of Ulysses R. Burton."

2. The next step was the second offer of the bond for approval on January 23, 1899, when the time within which the appeal bond could be given, under the rules, had expired.

The proof of Burton's signature then consisted of his letter with the endorsement of Daniels thereon.

It is said in the return that the signature to this letter is totally unlike the signature to the bond, and that if it had been necessary to decide the fact at that time, respondent would have held the statement in the letter to be untrue. The reason for not then entertaining the question of the execution of the bond is thus stated: "I consider this motion as equivalent to an offer of a new bond after the period allowed therefor had expired, and did not think I had any power to accept it even if it were a good bond."

Considering the bond as if then presented for approval, it came too late. The relators contend that the bond was "filed," within the meaning of Rule 10, when presented to the justice for approval on December 13, 1898, and that the formal approval could be endorsed at any time thereafter.

It is true, that, in the first instance, the appellant's duty is performed when he offers the bond for approval. If not then rejected, a formal approval made later would relate back to the former date, for the party's right could not be destroyed by the mere delay of the justice. The clerk can not be required to receive and file the bond as a part of the

proceedings in the cause, until it shall have been approved by the justice. We have indicated above how the time may be saved in case of refusal to approve on account of doubt in respect of the execution of the bond by any one of the parties thereto. When the justice refuses to approve the bond for any reason, it can not be considered as "filed," or any longer before him. The only recourse then, is to apply for time to prove the genuineness of the bond, or to re-offer it, or a substitute bond, within the time limited by the rule.

Under the facts as disclosed by the return, we think that the respondent did not err in refusing to consider the bond when offered the second time, because his power to approve an appeal bond in the case had ceased with the expiration of the time allowed in the rule.

Not having been convinced that it was the plain and positive duty of the respondent to approve the bond when offered, either upon December 13, 1898, or upon January 23, 1899, the rule to show cause must be discharged and the petition dismissed, at the relator's costs. It is so ordered.

*Dismissed.*