## STATE OF MARYLAND vs. WILLIAM H. KNOWLES

*Regulating the Practice of Dentistry—Constitutional Law—Police Power—Construction of Statutes—Examination of Dental Graduates—Indictment.*

A statute requiring persons practising dentistry to obtain a certificate of proficiency from a State Board of Dental Examiners is a valid exercise of the police power.

The Act of 1896, ch. 378, provides that any person desiring to practice dentistry in this State who holds a diploma from a college authorized to grant diplomas for dental surgery " may be examined " by the State Board of Dental Examiners " with reference to qualifications and after passing an examination satisfactory to the board " his name shall be registered, &c., and a certificate issued.   "Any graduate of a regular college of dentistry may, at the discretion of the examining board, be registered without being subjected to an examination."    Defendant was indicted for practicing dentistry without a certificate, and alleged that the Act was unconstitutional because it gave to the State board the arbitrary power to examine or to refuse to examine persons holding diplomas in dentistry, also because it authorized the board to examine applicants upon any subject whatever, and also because it authorized the board to dispense with the examination in certain cases.   *Held,*

1st. That the provision in the statute that the applicant " may be examined " imposes upon the board the duty of examining all the applicants according to the general rule that when a statute directs an act to be done for the benefit of the public or third persons, the word " may " employed in conferring the authority to do the act, is to be construed as " shall " or " must," and the fact that the word " may " is used in its permissive sense in the latter part of the same section, does not require that construction to be given to it in the ormer part.

2nd. That the authority to examine applicants with reference to qualifications does not refer to any other qualifications than those required for the practice of dentistry and confers no arbitrary power to examine on other subjects.

3rd. That the provision authorizing the board in its discretion to dispense with the examination of graduates of a regular college of dentistry is valid, and does not create an arbitrary classification of persons to be examined.

An indictment for the violation of a statute which contains an exception in a section thereof subsequent to that containing the general prohibition need not negative the exception.

Appeal from the Criminal Court of Baltimore City, (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*E. P. Keech, Jr.* (with whom was *Isidor Rayner, Attorney General,* on the brief), for the appellant.

It is too late in these days to deny the power of the Legislatures of the various States to enact statutes regulating the conduct of those businesses, trades and professions which have primarily to do with the public health or welfare. *In the Matter of Chas. Taylor,* 48 Md. 28; *McAllister* v. *State,* 72 Md. 390; *Singer* v. *State,* 72 Md. 464; *State* v. *Broadbelt,* 89 Md. 565; *Mugler* v. *Kansas,* 123 U. S. 623; *Dent* v. *West Virginia,* 129 U. S. 114; *Williams* v. *Mississippi,* 170 U. S. 213; *State* v. *Randolph,* 23 Oregon 74. And for a collection of a large number of cases on this and kindred lines see note to *Louisville, etc., Co.* v. *L. & N. R. Co.,* 14 L. R. A. 579.

The English of sec. 5 of the Act is bad, but there can be no two interpretations of its language. Its meaning, in substance, must be this : Any person having the preliminary requisites, *i. e.,* twenty-one years of age, and the holder of a dental diploma, may apply to the Board of Examiners for examination and registration. The board has power to waive this examination and to grant the license without it. But unless they decide to waive the examination, in the exercise of the discretion vested in them, the board *must* propose an examination to the applicant. Upon passing this successfully—and this the Act defines to be " satisfactory to said board "—the applicant *must* be registered and a certificate issued to him.

In this interpretation and construction of this word "may,"

we meet the first of the appellee's points, viz., that the board of examiners is vested with a discretion amounting to an irresponsible power, in the exercise of which they may without reason refuse to admit an applicant to an examination. In our view of the intention of the Legislature contained in these words, and in opposing the construction of them contended for by appellee's counsel, we are sustained, not only by common sense, but also by every rule of statutory construction. For it is an elementary principle that the Courts, in construing a statute, will hold that "may" is equivalent to the word "shall" or "must," whenever reason or the necessities of the case so require. *Sifford* v. *Morrison,* 63 Md. 14 ; *Endlich on Interpretation of Stat.*, sec. 306; *Smith on Statutes, etc.,* p. 724 *et seq.*; *Maxwell on Interpretation of Stat.*, p. 286 *et seq.* In other words, every qualified applicant must be registered, and the only discretion vested in the board is in the power to waive the examination of the applicant.

But in this discretion the appellee finds his second ground of criticism, and he contends that there is injustice and inequality to be found in it, such as is prohibited by the Fourteenth Amendment to the Constitution of the United States and Article 23 of our Maryland Bill of Rights. He contends that all persons should be compelled to submit to an examination, or that none should be examined, and that if the board has power to waive an examination in one case, while requiring it in what would appear to be an equally meritorious case, then an arbitrary distinction is made between persons of precisely the same class and condition. But the answer to his argument is to be found in the fact that this statute has taken away no right from persons desiring to practice dentistry in this State. The Legislature has merely undertaken to impose certain restrictions upon that right, and to prescribe certain qualifications, which it demands of all such individuals. In requiring an examination of such persons, it does what it has a perfect right to do, and thereby it has provided a fair and equal method whereby

all persons may comply with the requirements of its laws, and obtain the right to pursue their profession in this State. In permitting its Board of Examiners to waive this requirement of examination, it has not added to the burdens of the appellee or any other applicant for registration. But it has vested in the Board of Examiners *the power to employ other means* to satisfy itself of the competency of the applicant, of the sufficiency of which the board is the only judge. See *Iowa Med., etc., Asso.* v. *Schrader,* 87 Iowa, 659 ; *Williams* v. *Dental Examiners,* 93 Tenn. 619 ; *State* v. *Creditor,* 44 Kansas, 565; *Hewitt* v. *Charier,* 16 Pick. 353.

The third ground of objection urged against this statute by the appellee is found in the fact that the applicant is to be examined " with reference to qualifications." In this last word appellee finds all manner of vice. He contends that standing alone as it does, it may mean qualifications to practice law, to shoe horses, to teach astronomy, or what not. But we submit that his position in this respect is utterly untenable. The qualifications referred to must be those reasonably necessary to the proper knowledge and practice of the profession of dental surgery. The word qualification must be taken in connection with the words of, and construed as a part of the whole subject-matter of, the statute in which it occurs, and in so construing it, its meaning cannot be ambiguous. "*Noscitur a sociis*" is an elementary rule of construction. *Smith on Statutes,* p. 656, etc.; *Endlich on Interpretation,* sec. 400 *et seq.,* sec. 532; *Maxwell on Interpretation,* p. 396 *et seq.; Alexander* v. *Worthington,* 5 Md. 471, Perkins Ed.; *Knowles* v. *State,* 87 Md. 204. What the subjects necessary to a proper knowledge to pursue the profession of dentistry are the Legislature in its wisdom has left to its technically trained Board of Examiners, who must by the very terms of the Act be dentists of experience. (Section 3.) There is not now, and there never has been, a suggestion that the examinations conducted by this board have not been reasonable and fair, both as to the subjects of examination and method of con-

ducting them.　And it has been held by the Supreme Court of the United States in the recent case of *Williams* v. *Mississippi, supra,* that a *possible* evil resulting from a discretion conferred upon a public officer is no ground for holding a statute to be unconstitutional and void, as denying equal protection of the laws of the State to all its citizens, when no abuse or illegal exercise of the discretion has been shown to exist.　*Williams* v. *Mississippi,* 170 U. S. 213; *Hiss* v. *Baltimore and Hampden Co.,* 52 Md. 242–251

*Albert S. J. Owens,* for the appellee.

Under section 5 of the Act no one can be examined, who does not hold a diploma from a college authorized to grant diplomas in dental surgery, but the board is not compelled to examine one holding such diploma.　The statute says : " Any one holding a diploma, &c., *may* be *examined,*" not *must.*　That may is used in its usual sense in this Act, is clearly shown by the context, for it is so used, in order to allow the board to admit certain persons without examination, to-wit, graduates of a regular college of dentistry. If, therefore, may is intended to mean may—this conclusion is inevitable.

The board may or may not examine a person holding a diploma, and they can therefore arbitrarily deny the right to practice dentistry to any one howsoever skilled, even if he has a diploma, by simply refusing to examine him.

It is difficult to understand how a college authorized to *"grant diplomas in dental surgery,"* differs from *"a regular college of dentistry* ; " if there is no difference between the two, the statute is undoubtedly void because, *at the discretion of the examining board, a person may be granted a certificate, without an examination, while one equally qualified, may be subjected to an examination.*　In other words, the statute would authorize arbitrary distinctions to be made between persons in the same identical class.　If, however, this is the intention of the Act, may *must* be intended to mean *may.*

If a distinction is to be made between a college "author-ized to grant diplomas in dental surgery," and a regular college of dentistry, then the argument made at the outset regarding the use of *may* is absolutely irrefutable.

This law leaves it to the board to impose conditions at the whim and caprice of the board. The general rule of law as to the degree of proficiency required of professional persons in their dealings with the public—the lack of which in any case submitted to their care, will impose liability— is that the person assuming to practice, shall possess and exercise as much knowledge and skill in any given case, as is possessed by the average person in the particular profes-sion. This is an equitable rule, and it would be proper exercise of legislative power to place such a limitation upon examinations for admission to the practice of dentistry. But it is certainly beyond the power of a legislative body to delegate, without the slightest attempt at control, the au-thority to fix the limits of an examination for admission to practice dentistry, to the whim and caprice of an irresponsi-ble and arbitrary discretion. *Dowling* v. *Lancashire Ins. Co.*, 31 L. R. A., 112 Wis.; *O'Neill* v. *Am. Fire Ins. Co.*, 26 L. R. A., 715 Pa.; *Anderson* v. *Manchester Fire Ins. Co.*, 28 L. R. A., 609 Minn.; *Dent's Case*, 129 U. S. 114; *Yick Wo's Case*, 118 U. S. 356; *Mayor of Balt.* v. *Radeke*, 49 Md. 227.

In *Singer's Case*, 72 Md. 465, this Court held in con-formity with the Supreme Court of the United States in *Dent's Case*, that the right of every person to follow any legitimate business or occupation, is limited by the right of the government to impose such restraint, and provide such regulations in regard to the pursuits of life, as the public welfare may require. This paramount right of the govern-ment depends primarily upon the judgment of the Legis-lature—if appropriate to the calling or profession, the regulations imposed are valid.

Is it *appropriate* in the sense of *reasonable*, to require that a dentist shall be a graduate of a dental college, when he

can by *actual practice* become thoroughly skilled in his profession, and his fitness to practice his profession can be eadily ascertained by a proper examination, before a competent tribunal?

Some light may be thrown upon this question by referring to the condition of the law regarding dentistry in other States of the Union.   It will be found that with the exceptions of the States of Pennsylvania and Minnesota, the right to an examination is not dependent upon the holding of a diploma, and that while in most cases, the holder of a diploma is not required to take an examination, one without a diploma may be examined touching his knowledge and skill in dental surgery.

· It is respectfully submitted, the law in question in this case, violates both the Declaration of Rights and the 14th Amendment;

· 1. Because the law leaves it to the arbitrary discretion of the State Board of Dental Examiners to deny the right to practice dentistry in this State, to any one they see fit.

2. Because it permits discrimination as between applicants equally qualified.

3. Because it denies the right to practice dentistry in this State, to all save those holding diplomas issued by some dental college, and such a regulation is not reasonable.

PEARCE, J., delivered the opinion of the Court.

The appellee was indicted in the Criminal Court of Baltimore City under the Act of 1896, ch. 378, which repealed and re-enacted with amendments Art. 32 of the Code of Public General Laws of Maryland, entitled " Dentistry." He demurred to the indictment upon the ground that the Act is unconstitutional.   The demurrer was sustained, the indictment was quashed, and the State has appealed.   The Act mentioned, created a State Dental Board of Examiners consisting of six members, charged with the duty of issuing certificates to those entitled under the Act, to practice

dentistry in the State.    The fifth and twelfth sections alone
concern this appeal, and these are as follows :

Section 5.  "Any person twenty-one years of age, who
has graduated at, and holds a diploma from, a university
or college authorized to grant diplomas in dental surgery
by the laws of any one of the United States, and who is de-
sirous of practicing dentistry in this State, may be examined
by said board with reference to qualifications, and after
passing an examination satisfactory to the board, his or her
name, residence or place of business, shall be registered in
a book kept for that purpose, and a certificate shall be
issued to such person.    Any graduate of a regular college
of dentistry, may, at the discretion of the examining board,
be registered without being subjected to an examination."

Section 12.  " Nothing in this article shall be so con-
strued as to interfere with the rights and privileges of resi-
dent physicians and surgeons, or with persons holding cer-
tificates duly issued to them prior to the passage of this
Act ; and dental students operating under the immediate
supervision of their instructors in dental infirmaries or
dental schools chartered by the State of Maryland."

This Act is assailed on the ground that it violates the
twenty-third article of the Maryland Declaration of Rights,
and the fourteenth amendment to the Constitution of the
United States.    The contention is twofold.    Viz :

1st.    That the board may, if it chooses, refuse to examine
one holding a diploma from a college or university author-
ized to grant diplomas in dental surgery, and can thus arbi-
trarily deny the right to practice dentistry in this State, to
any one holding such diploma, however skilled in his pro-
fession, or however qualified to pass an examination, and
that as the test of constitutionality, is, not what has been,
but what may be done, or refused under the law, this grant
of arbitrary power to do, or to refuse to do, must invali-
date the law, and ;

2nd.    That the language of the Act—" may be examined
with reference to qualifications "—is so vague and inde-

terminate as to permit an examination upon any subject which the whim, caprice, or hostility of the board may suggest, and thus again confers upon the board unreasonable and arbitrary power, equally fatal to the validity of the law.

If either of these contentions were well founded, we should be compelled to pronounce the law unconstitutional, because we are in hearty accord with the declarations of the Supreme Court of the United States in *Yick Wo* v. *Hopkins*, 118 U. S. 356, that " when we consider the nature and theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power."

But we cannot deduce a grant of arbitrary power from any reasonable construction of the language of this Act.

Upon the first point of the appellee, his position is, that as the word, " may," occurs twice in section five, and as there can be no question that in the later clause it is employed in its usual and natural sense, that the same sense is necessarily and unalterably impressed upon its employment in the former clause. But he has produced no authority for this position, and we do not think any satisfactory reason can be given for announcing so inexorable a rule of construction. It may indeed well be conceded, that where a word susceptible of more than one meaning is repeated in the same Act, or section of an Act, (either meaning being in each case open to reasonable adoption) a presumption arises, more or less forcible according to the circumstances, that it is used throughout in the same sense ; but where the subject-matter to which the word refers, is not the same in both clauses, or where the surrounding circumstances are different, this presumption must yield to an adverse presumption, furnished by an analysis of the various purposes of the law, and of the language in which those purposes are expressed.

Now it is too plain for controversy, that the appellee is correct in saying that the last, " may," is used in a permissive sense, because it is expressly coupled with " discretion," which negatives the possibility of its use in a mandatory sense.   But if the same sense is to be impressed upon its use in the preceding clause, the result will be to nullify the law, and this result cannot be tolerated if it can be avoided by any fair and reasonable construction of the whole section.    In order to reach such fair and reasonable construction let us suppose for a moment, the latter clause to be eliminated from the law.    How then would the word " may," in the former clause be understood?    Would it not necessarily be construed " shall," or " must," in conformity with the established rule of law that where the duty to be performed, is for the benefit of the public or third persons, it shall be so construed ?    The duty of examination upon application (where there is no express discretion to waive examination) is for the benefit of both the public and the applicant.    For the benefit of the public, because it protects the public against ignorant and incompetent practitioners, and for the benefit of the qualified applicant, because it puts him before the public with the seal of approbation from a competent and disinterested tribunal.    The origin and development of this elementary rule is clearly set forth in *Sifford* v. *Morrison*, 63 Md. 18, and many of the cases are there cited in which it has been recognised and applied.

Having determined the construction proper to be adopted if the former clause of the section stood alone, let us now restore the latter clause and see if the conclusion reached can be thereby in any manner affected.    For the reason already stated, it is impossible that " may" can in the latter clause be construed " shall," no matter how the former " may " is construed, and if, merely because this cannot be done, we are compelled to construe " may " in the former clause as used in a permissive sense we shall be deliberately rejecting the meaning which an established

rule of law, and the plain purposes of the Act, require us to adopt in construing the former clause of the section. The law does not permit itself to be frightened out of its propriety by the hobgoblin of inconsistency, and we have no hesitation in holding that the only discretion conferred, is to waive an examination, when the applicant is a graduate of a regular college of dentistry and that in all other cases covered by the Act, examinations must be granted when application is made in accordance with reasonable rules as to time and place. We think the Act does mean to distinguish, for the purpose of examinations, between "a college or university authorized to grant diplomas in dental surgery," and " a regular college of dentistry." In the former, dentistry may be but an adjunct to the course, and there is no such assurance of thoroughness of instruction and practical application, as must be presumed in a regular dental college where the whole time of the students and instructors is given to the theory and practice of dental science. Discriminations of this character have been sustained in *Williams* v. *Dental Examiners*, 93 Tenn. 619, and in *State* v. *Creditor*, 44 Kansas 568, and the exact principle upon which these discriminations rest, has been recognized in *State* v. *Vandersluis*, 42 Minn. 129, and in numerous cases where the authority to determine what colleges are " reputable and in good standing," has been held not to be an arbitrary or unreasonable authority.

Upon the second point little need be said. The language of the Act might well have been more specific, but it is impossible to suppose that it refers to any other qualifications than those appropriate to and requisite for the practice of dentistry. To hold that this language would permit an examination in astronomy, classics, mathematics, or even in the kindred study of medicine, would be to adopt a forced and violent construction of the law, not for the purpose of sustaining, but defeating it.

The constitutionality of the Act was not assailed on any other grounds than those we have considered, nor can we

perceive how it could be otherwise successfully assailed, in view of the numerous decisions of the Supreme Court of the United States, where similar statutes have been held to violate no constitutional requirement.   There is no stronger or clearer exposition of the law applicable to this case than that contained in the following passage from the much cited and oft approved case of *Dent* v. *West Virginia*, 129 U. S. 114.   " The nature and extent of the qualifications required must depend primarily upon the judgment of the State as to their necessity.   If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty.   It is only when they have no relation to such calling or profession, or are unattainable by reasonable study and application that they can operate to deprive one of his right to pursue a lawful vocation."

In *Singer* v. *State*, 72 Md. 464, this Court in sustaining the Act of 1886, ch. 439, regulating the business of plumbers in Baltimore City, adopted the language last quoted, and added, " no one questions the right of every person in this country to follow any legitimate business or occupation he may see fit.   This is a privilege open alike to every one.   His own labor, and the right to use it as a means of livelihood, is a right as sacred, and as fully protected by the law as any other private right.   But broad and comprehensive as this right may be, it is subject to the paramount right, inherent in every government, to impose such restraint, and to provide such regulations in regard to the pursuits of life as the public welfare may require."

The most recent expression of this Court upon this subject is in the case of the *State* v. *Broadbelt*, 89 Md. 565, sustaining the Act creating a State Live Stock Sanitary Board, from which the following passage may be appropriately reproduced.   " If the Legislature of Maryland has by the statute under consideration, made a class to which the provisions of the Act were designed to apply, and if that

classification is just and reasonable, and not purely arbitrary, the ruling on the demurrer (sustaining it) was wrong."

The same reasons which apply to the profession of medicine, apply with equal force to the profession of dentistry, which is but a special branch of the medical profession, *State* v. *Vanderluis*, 42 Minn. 130; *Gosnell* v. *The State*, 52 Ark. 231; *Louisville Co.* v. *L. & W. R. R. Co.*, 92 Ky. 233; 14 L. R. A., note, p. 581.

We were informed at the argument in this Court, that the learned Judge of the Criminal Court expressed himself as being clearly of the opinion that the statute is a valid exercise of the legislative power, and that he sustained the demurrer only on the ground that the indictment does not negative the exception contained in the 12th section of the statute, a ground not relied on by the appellee's counsel, either below, or in this Court. The rule, that where after general words of prohibition, an exception is created in a subsequent clause or section, it must be interposed by the accused as matter of defence, is too firmly settled in this State to be questioned. *Stearns* v. *State*, 81 Md. 344; *Kiefer* v. *State*, 87 Md. 562.

For the reasons stated the judgment will be reversed, and the case will be remanded for a new trial.

> *Judgment reversed and new trial awarded, costs above and below to be paid by the appellee.*

(Decided February 15th, 1900).