BOARD OF ELECTION SUPERVISORS *v.* OLIVER
O. WELSH

[No. 5, January Term, 1941.]

*Decided February 19th, 1941.*

The cause was argued before SLOAN, MITCHELL, JOHNSON, DELAPLAINE, and COLLINS, JJ.

*Ralph G. Hoffman* and *A. Earl Shipley,* for the appellants.

*James E. Boylan, Jr.,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

The appellee, Oliver O. Welsh, filed a petition to the Circuit Court for Carroll County against the members of the Board of Election Supervisors of Carroll County, praying the writ of mandamus to compel them to provide an additional polling place in Mount Airy District, and from a decision against them, they appeal. They first demurred to the petition; and when the demurrer was overruled, they answered, evidence was taken, and the case decided against them on the merits, although the question of the sufficiency of the petition is still open on appeal.

The petitioner alleges that the total number of registered voters in Mount Airy District is 901, and that there were cast in the election held in November, 1938, approximately 759 votes (the answer admits 819 votes); that, by section 137, Article 33 of the Code, the Supervisors of Election are "empowered and authorized," "whenever in their judgment and discretion, it shall be expedient for the convenience of the voters, to sub-divide any of said election districts or election precincts," and by section 138 they "shall have power whenever more than 600 persons are registered in any one election precinct or in any election district which may not be divided into election precincts, to provide one additional polling place in each such election district or precinct" (section 138 was amended, but the part quoted not changed by the Act of 1939, chs. 11 and 735 and Act of 1936, Special Session, ch. 52); that the public convenience requires that the Mount Airy District be divided into two precincts as provided by section 137, or two polling places in accordance with the provisions of section 138; that in March, 1940, a resolution was passed and signed by four of the five Republican District Committeemen and five of the six Democratic District Committeemen, requesting the Election Supervisors to provide two polling places, but the person to whom it was sent for presentation failed to deliver it, but the Supervisors must have known of it, for they did consider the matter and re-

fused to act in accordance with the request; thereafter, on April 3rd, 1940, a similar resolution was signed and presented. and the Board again, by a vote of two to one, declined the request and refused either to provide two polling places or to divide the district, and then the petition alleged, "That the action of said Board of Election Supervisors of Carroll County is arbitrary and dictatorial and was not prompted by any desire to serve the public convenience," and prayed the writ of mandamus.

The defendants demurred and. gave as ground of demurrer that the question of dividing an election district or providing an additional polling place was discretionary, and that the action of the Supervisors was in the valid exercise of this discretion.

The court held that whenever the conditions arose in an election district imposed by section 138, its provisions became mandatory, and in addition the demurrer admitted the truth of the charge that the action of the Board was arbitrary and dictatorial, and that the petition required an answer. The defense set up in the answer was that "the public convenience did not require two polling places and that it was a matter within their discretion and judgment as to the division," and denied that they had not carefully considered the request.

The testimony taken was not included in the record, and we must therefore assume that the conclusion of the court was correct, and showed that the public convenience did require the additional polling place. The appellee, in his brief, says, "as the question seemed to be based principally upon the construction of sections 137 and 138 of article 33 of the Code, it was agreed that the testimony be eliminated from the record to this court." The appellants in their brief agree with this.

The question submitted to this court, then, is the correctness of the court's ruling on the demurrer.

Section 138, article 33, was passed in 1922; ch. 318, sec. 127A. and reads in part: "The Board of Supervisors of Election of Baltimore City and the Boards of Supervisors of Election of the several counties shall have

power whenever more than 600 persons are registered in any one election precinct or in any election district which may not be divided into election precincts, to provide one additional polling place in each such election precinct or district." The Act of 1922 was amendatory of the Act of 1920 (special session), ch. 1, sec. 127A, which had read: "The Board of Supervisors of Elections of Baltimore City shall have power and the Boards of Supervisors of Elections of the several counties are directed whenever more than 800 persons are registered in any one election precinct or in any election district which may not be divided into election precincts to provide one additional polling place in each such election precinct or district."

The appellants' sole contention is that the use of the word "power" in the Act of 1922, ch. 318, for the word "directed" in the Act of 1920 (special session), ch. 1, sec. 127A, shows a legislative intent to substitute a discretionary power for a mandatory duty. In other words, power never spells duty, unless the Legislature, expressly says so. In section 137, article 33 of the Code, Act of 1922, ch. 269, sec. 127, passed at the same session as that here under consideration, and an amendment of the same election laws, section 137, it is still in the Code, gave the "Board of Supervisors of Elections of the several counties * * * whenever in their judgment and discretion it shall be expedient for the convenience of the voters, to sub-divide any of said election districts or election precincts, or to sub-divide and change the boundaries of any two or more precincts in any election district into three or more precincts, or to change the boundaries of any two or more election precincts, they are hereby empowered and authorized to make such sub-divisions and to establish the boundaries of such sub-divisions in such way as to facilitate and expedite the casting of their ballots by the voters thereof," and the only limitation on their discretion is that the supervisors could not sub-divide any precinct or group of precincts, unless one or more of the precincts to be divided contained an excess of 400 voters.

The question then is the meaning of the word, "power," as contained in the Act of 1922, and the expression of the legislative intent. Does the word include discretion, or does it exclude it?

If the Legislature in one section of the election law grants to Election Supervisors of the Counties the power "in their judgment and discretion" to carve additional precincts out of a district, intended in the next section to grant a discretionary power to make an additional polling place in a precinct, it would logically have said so. There is no theory that we know of whereby the qualification in section 137 can be transported into and applied in section 138, where the word "power" is not qualified by anything except that such creation of an additional polling place shall not be done where the registration of voters is 600 or less.

As the trial judge said in his opinion on the demurrer: "There is no substantial distinction to be drawn between the intention of the Legislature when it absolutely gave the power to set up a polling place, whenever a prescribed condition existed, and when it directed the same thing to be done under a like condition. To direct the thing to be done is an implied, instead of an immediate grant of the power to do it. So, the change in the wording from that of the Act of 1920 to that of 1922 and later was not of substance but one merely of form." The soundness of conclusion stated is supported by the principle that words by which acts are to be performed in the public interest are construed as imposing duties rather than discretion. *Rock Island County v. United States,* 4 Wall. 435, 446, 18 L. Ed. 419; *Ex parte Jordan,* 94 U. S. 248, 24 L. Ed. 123; *Martin v. Hunter,* 1 Wheat 304, 4 L. Ed. 97; *Korb v. Fox,* 225 Ky. 534, 9, S. W. 2nd 298; *State v. Knowles,* 90 Md. 646, 648, 45 A. 877; 46 *C. J.* sec. 304, p. 1036, with which this court agrees. In *State v. Knowles,* supra [90 Md. 646, 45 A. 878], this court said, "Would it ["may"] not necessarily be construed 'shall,' or 'must,' in conformity with the established rule of law that where the duty to be performed, is for the benefit of the public

or third persons it shall be so construed." In *Cochrane v. Frostburg*, 81 Md. 54, 64, 31 A. 703, 705, it was said, "When a statute conferred a power upon a corporation to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative, and the words 'power and authority' in such case may be construed 'duty and obligation,' " following similar decisions of this court in *Marriott's Case, Mayor, etc., of Baltimore v. Marriott*, 9 Md. 160, 174, and *Taylor v. Cumberland*, 64 Md. 68, 20 A. 1027.

The appellants contend and forcibly argued that the rule of construction that "Long, uninterrupted, and unvarying construction of statute by administrative officials is entitled to force of law," *Arnreich v. State*, 150 Md. 91, 132 A. 430. should for the same reason be adopted here. The difficulty about adopting or applying this rule of construction to support appellants' contention is that Supervisors of Election all over the State have adopted it by exercising the power conferred by section 137 and 138, by the creation of additional precincts or polling places whenever the public convenience required it to be dnoe. Another explanation, and just as reasonable, is that the public has been satisfied with the statute in operation, as this seems to have been the first case in which large numbers of voters have found it necessary to put it in operation, and not on account of any acquiescence in the construction of the word "power" now urged by the appellants. *Associated Professors of Loyola College v. Stuart*, 179 Md. 96, 16 A. 2nd 895.

For the reasons stated the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*