MAREK ET AL. *v.* BALTIMORE COUNTY BOARD OF APPEALS ET AL.

[No. 26, September Term, 1958.]

*Decided  December  19,  1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, PRESCOTT and HORNEY, JJ., and HENRY, J., Chief Judge
of the First Judicial Circuit, specially assigned.

*Fletcher Krause,* with whom was *Leonard A. Vadala* on
the brief, for the appellants.

*W. Lee Thomas,* with whom were *Kenneth C. Proctor* and
*Proctor, Royston & Mueller* on the brief, for the appellees.

HENRY, J., by special assignment, delivered the opinion of
the Court.

This is an appeal from an order of the Circuit Court for
Baltimore County affirming the action of the Board of Zoning
Appeals of Baltimore County (the Board) granting a use
permit for off-street parking at a public beach being operated
as a non-conforming use in an R.6, or Residential, one and
two family zone.

W. Ralph Peddy and Rollin Peddy, his wife, (the Peddys
*or* the proponents) in 1948 became the owners of a tract of
land containing about 2 acres known as and called "Miami
Beach" fronting approximately 300 feet on Chesapeake Bay
and with a depth of approximately 300 feet. This land is
situated in the 15th Election District of Baltimore County,
near the community of Bowley's Quarters and has for many
years prior to its purchase by the Peddys been operated com-
mercially as a public bathing beach and they have continued
that operation. In 1945, when the initial zoning in Balti-
more County became operative, this property was classified as
an R.6 Residential Zone and its continued operation has been
conducted as a non-conforming use.

In June, 1956, the Peddys applied to the Deputy Zoning
Commissioner of Baltimore County for permission to use the
area, which is the subject of this appeal, for off-street park-
ing facilities under the provisions of Section 409.4a of the
Zoning Ordinance as it was then worded and received such
permission from the Commissioner. Upon appeal to the
Board by Charles B. Marek, and others, (the protestants) in

the area and after a hearing by that Board, the decision of the Commissioner was reversed and the permission for the off-street parking privilege was withdrawn.

At the time of the hearing by the Board (now known as the Baltimore County Board of Appeals) it must have thought that Section 409.4 of the Zoning Regulations provided that "land in any residential zone may be used for parking areas * * * provided that:

> "a. The land so used immediately adjoins or is directly across an alley or street from the business or industrial zone for which such off-street parking space is required * * *."

The opinion of the Board was rendered December 13, 1956, and must have been based on the provision of § 409.4a, *supra*, because in its opinion, denying the permit sought, the Board said in part:

> "We think the regulations should be held to mean exactly what they say i. e. land in a residential zone may be used for parking when adjoining a 'business or industrial zone.'
> "The petitioners' beach property is not in a business or industrial zone, but in a residence zone and we conclude that the Use Permit granted by the Zoning Commissioner was in error and should be revoked and refused."

Actually at the time of this action, and apparently without the knowledge of the Board, the said sub-section "a" had, on November 21, 1956, been amended to read as follows:

> "a. The land so used must adjoin or be across an alley or street from the business or industry involved."

The effect of this amendment was to change the requirement that the land to be used be adjoining or across the street or alley from a business or industrial zone, which the land in question here is and was not, to the requirement that it adjoin or be across a street or alley from the business or in-

dustry involved, which the land in this case was and is, thus bringing the land in question within the scope of the regulations.

In the next sequence of events the Peddys again, that is, on May 17, 1957, filed a petition with the Zoning Commissioner for an off-street parking permit on the same land, covering an area of approximately the same size as the original tract. After a hearing, the Commissioner on June 19, 1957, denied the permit. Upon an appeal and subsequent hearing before the Board, the permit was granted on July 23, 1957. This was followed by an appeal to the Circuit Court for Baltimore County, which court, on January 21, 1958, affirmed the decision of the Board.

In addition to the two applications by the Peddys above mentioned, they did further, on January 31, 1957, file a petition with the Zoning Commissioner for a re-classification of their property from R.6 (residential) to B.L. (business local). On May 9, 1957, the Board affirmed an order of the Zoning Commissioner denying the re-classification and an appeal was taken to the Circuit Court for Baltimore County, which is still pending.

Four questions are raised by the protestants.

First, it is argued that the petition which is now before us for a permit for off-street parking, is in legal effect a petition for a special exception brought within 18 months from the date of the final order in the case just above mentioned which was a petition for re-classification of the same property and under the provisions of Section 500.12 of the Baltimore County Zoning Regulations, should be dismissed. *Tyrie v. Baltimore County,* 215 Md. 135, 137 A. 2d 156 (1957).

Section 500.12, *supra,* provides as follows:

"No new petition for reclassification or Special Exception shall be entertained by the Zoning Commissioner in any case which has been considered and acted upon by him until the expiration of 18 months from the date of his final Order thereon. Where an appeal is taken from any decision of the Zoning Commissioner to the Board of Zoning Appeals, the

Zoning Commissioner shall not entertain any new petitions for reclassification or Special Exception until the expiration of 18 months from the date of the final order of said Board of Zoning Appeals."

This then brings us to the question as to whether or not the petition filed in this case is a petition for a special exception from the use that can be made of land lying in a zone classified as R.6 Residential. We must conclude that this petition is not a request for a special exception. It is quite true that the zoning ordinance does provide that under certain circumstances and for certain purposes which are enumerated at length a different use may be made of the land than that which the zoning ordinance contemplates. Section 270 sets out this Schedule of Special Exceptions in detail and Sections 502 and 502.1 set forth the principles and conditions which shall govern the Zoning Commissioner and the Board.

Off-street parking is not mentioned among the many things which may be the subject of a special exception and the power to determine what situations shall be considered in that category is a legislative function, resting in this instance with the County Council of Baltimore County, and is not an administrative function of the Zoning Commissioner. The function of the Zoning Commissioner is limited to a determination under the existing factual situation if a special exception, one among those listed in the ordinance, is appropriate in any particular case.

In this case the application was made and the use for off-street parking was granted under the provisions of Section 409.4, *supra*,—

"Business or Industrial Parking in Residence Zones—Upon application the Zoning Commissioner may issue a use permit for the use of land in a residential zone for parking areas subject to the following conditions. If granted, such use permit shall be conditioned as follows, in lieu of the provisions of Section 409.2 (c)."

There follow eight conditions which must be observed as a condition precedent to the granting of the permissive use, the

first of which is sub-section "a" amended, as above noted.

There is nothing in this provision to suggest a special exception to the use permissible in the zoning area for the land in question but it is a provision for off-street parking on land in the restricted zone in aid of better use of land which it adjoins and which in this case is a non-conforming use. It does not and can not and is not intended to increase, expand or in any way enlarge the size or area of the non-conforming use though its effect may be to intensify that use by making it possible for more people to comfortably enjoy the bathing facilities which that use affords.

There is testimony that in the summer months when the bathing facilities provided by the beach of the proponents is largely used, and especially on weekends or Sundays during those months, traffic was so congested when parking was allowed on the roads approaching the beach, that it became a hazard making it nearly impossible even in an emergency for traffic to flow either in or out of the area. In order to correct this situation, "no parking" signs were placed along the roads.

There is testimony that the beach is used by as many as 2000 people on Sundays from the rapidly growing neighborhood; that one church in particular uses it and the Pastor of that church testified that in searching the area, it proved to be the best available and most satisfactory beach for his church's interest. He further testified that it was well managed, was safe for children, had no concessions to increase the expense and furnished an important source of recreation.

It seems obvious that the Board must have concluded, as we conclude, that the placing of "no parking" signs along the roads approaching the beach, while proper to relieve traffic congestion, did cause a hardship to not only the owners and operators of the bathing beach, but also was a hardship to the great number of people who used it for normal and healthy summer recreation.

The Board, in granting the permit, said in part as follows:

"The petitioner in this case seeks a use permit with a variance concerning same for off-street park-

ing at a public beach operated as a nonconforming use in an 'R.6 zone.' Many problems of public health, traffic congestion and expansion of the business under nonconforming privileges were considered carefully by the Board and the decision to grant the use permit and variance was made to most sensibly meet conditions, therefore, the petition is granted with the following restrictions and is further defined by Section 409.4 as amended November 21, 1956."

Then follow the restrictions for the use permit.

This Court may not substitute its judgment for that of an Administrative Board, but it may set aside the action of such a Board if such action is discriminatory, arbitrary or illegal. In this case we think the testimony fully justifies the decision of the Board.

What has been said will dispose also of the 3rd question raised by the protestants as to whether the action of the Board in allowing the off-street parking permit was arbitrary, illegal, invalid and capricious.

The second question posed by the protestants is whether the provisions of Section 409.4, *supra,* constitute a valid, lawful and constitutional delegation of the police power.

In their brief, as well as in the argument, the protestants stress the use of the word "may" in the first paragraph of Section 409.4, *supra,* and argue that its use makes the issuance of a permit or not discretionary. But, if this were so, as was said by this Court in the case of *State v. Knowles,* 90 Md. 646, 655, 45 A. 877 (1900), "the result will be to nullify the law, and this result cannot be tolerated if it can be avoided by any fair and reasonable construction of the whole section." Clearly it is the purpose of this section to provide for unusual conditions that may appear in a certain case, as in this one, which justify the lifting or easing of general restrictions in order to permit the use of land, if the public will be benefited, in a manner contrary to the general restrictions. The Zoning Commissioner may not be arbitrary in his action. If the general public good appears to be clearly attained by the

granting of the permit, then he must grant it. If not, then he must refuse it. But as has been said, he may not be arbitrary or capricious in the exercise of his judgment.

In the case of *Heath v. M. & C. C. of Baltimore,* 187 Md. 296, 49 A. 2d 799 (1946), the protestants attacked a decision of the Board which had approved a use permit. This Court reversed stating the Board had not taken into consideration the necessary standards. The ordinance itself was not attacked, but this Court said on p. 303:

> "On this appeal there is no need to discuss the constitutional validity of paragraph 14 except to say that an ordinance which delegates a part of the police power to a zoning board may be valid, even though it confers upon the board a certain discretion in the exercise of that power, provided that its discretion is sufficiently limited by rules and standards to protect the people against any arbitrary or unreasonable exercise of power."

It may be noted that in the above case in paragraph 14, the word "may" is used as in this case.

In the case of *Tighe v. Osborne,* 150 Md. 452, 133 A. 465 (1926), in determining whether the standards prescribed for the issuance of use permits in Baltimore City were adequate after holding that the applicable standards were sufficient to sustain the validity of the delegation of power, this Court said at p. 463:

> "The field has become so vast, and the things to be considered so enlarged in number and so interrelated with one another, that it has been found practically impossible to provide in laws and ordinances specific rules and standards by which every conceivable situation can be measured and determined. The result has been that we have turned more and more to the plan of providing in our laws and ordinances general rules and standards, and leaving to administrative boards and agencies the task of acquiring information, working out the details, and applying

these rules and standards to specific cases. This is not considered a delegation of legislative authority, though it probably does represent an expansion of administrative power. We think the ordinance now under consideration is one of this class, and that the rules and standards which it provides for the regulation of the zoning commissioner furnish a sufficient limitation upon the discretion it vests in him."

This Court also said in the case of *Pressman v. Barnes,* 209 Md. 544, 121 A. 2d 816 (1956), at p. 555:

"The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases."

Again this Court said in the case of *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 121 A. 2d 249 (1956), at p. 437:

"It is settled by a long line of cases in this State that, where a legislative body under the powers granted by the Legislature has enacted a zoning ordinance, the review by the court is restricted and narrow in scope. Such an ordinance is presumed to be valid in the exercise of the police power. A successful attack must affirmatively and clearly show that the ordinance is arbitrary, capricious, discriminatory, or illegal."

To the same effect are cases from other jurisdictions: *Root v. City of Erie Zoning Board of Appeals,* 180 Pa. Super. 38, 118 A. 2d 297 (1955); *Bishop v. Board of Zoning Appeals,* 133 Conn. 614, 53 A. 2d 659 (1947); *Phillips v. Town of Belleville,* 135 N. J. L. 271, 52 A. 2d 441 (1947).

There are eight standards set forth in Section 409.4, *supra,* and we think that they are sufficient to constitute a valid, lawful and constitutional delegation of the police power.

This brings us to the last question raised which concerns the action of the lower court in not admitting the proffer of

testimony offered by the protestants. This testimony was not offered before the Board though the witness through whom the proffer was made did testify before that Board. A substantial part of this additional testimony was admitted and we do not think the lower court committed any prejudicial error in refusing to admit the balance. The order will be affirmed.

*Order affirmed, costs to be paid by the appellants.*