# Lamb's Nomination Petition.    Fenton's Nomination Petition.

*Elections—Mine inspectors—State office—Nomination petitions—Obvious errors.*

1. The office of mine inspector is a State office and candidates therefor can be voted for only in an even numbered year.

2. A nomination petition to have printed the name of a candidate for the office of mine inspector upon a ballot to be used at a primary election in an odd numbered year, is erroneous on its face and is properly set aside at the instance of a qualified elector of the county wherein it was filed, without regard to the party affiliation of the petitioner.

Argued Oct. 8, 1915.    Appeals, Nos. 355 and 356, Jan. T., 1915, by A. B. Lamb and P. C. Fenton, from final order of C. P. Schuylkill Co., Sept. T., 1915, Nos. 360

and 361, setting aside nomination petitions in the matter of the Nomination Petition Filed by A. B. Lamb for the Office of Mine Inspector and in the matter of the Nomination Petition Filed by P. C. Fenton, for the Office of Mine Inspector. Before Brown, C. J., Potter, Elkin, Stewart, Moschzisker and Frazer, JJ. Affirmed.

Petition to set aside nomination petitions.

Koch, J., filed the following opinion:

On the 26th day of July, 1915, A. B. Lamb filed in the county commissioners' office his petition to have his name printed on the official ballot of the Republican party or policy of the County of Schuylkill for the office of mine inspector at the fall primary for the year 1915, and on the 26th of August, 1915, Michael A. Carey, through his counsel, presented to the writer, sitting at chambers, a petition setting forth that he is a qualified elector of the Township of Butler, in this county, and in the fourth inspection district of the anthracite coal district, and averring "That no nomination for the office of inspector of mines can be legally made at the fall primary of 1915." He prayed that the petition of Mr. Lamb be set aside for the following reasons, viz:

"1. That a nomination for the office of mine inspector for the County of Schuylkill cannot be legally made at the fall primary, 1915.

"2. That the office of mine inspector is not a county office, but is a State office, nominations for which can be made only at the spring primary in an even numbered year."

The 30th day of August, 1915, was fixed for hearing and at that time counsel for Mr. Lamb filed a demurrer, and assigned two causes for demurrer, to wit:

First—The questions presented for the court's consideration cannot be raised in the proceeding under the provisions of the Act of July 12, 1913, P. L. 719, Section 8.

Second—The said M. A. Carey, exceptant, has no standing to raise said questions.

The Constitution of our State provides for a general and for a municipal election, and fixes the Tuesday next following the first Monday of November to hold such elections alternately. It provides that general elections shall be held in all even numbered years. At general election members of the general assembly and officers who are to attend to the affairs of the State are elected. At municipal elections persons who are to attend to the affairs of counties, cities, boroughs and townships, and judges of the courts of the several judicial districts in the State are elected. It is especially provided that judges elected by the electors of the State at large may be elected at either election, Constitution, Article VIII, Sections 2 and 3.

If the office of mine inspector directly concerns the affairs of a county, city, borough or township, it is a municipal office, and must be filled at a municipal election, but if it directly concerns the affairs of the State, it is a State office, and must be filled at the general election.

The first act relating to such office was approved on April 12, 1869, P. L. 852, and is entitled, "An Act for the better regulation and ventilation of mines, and for the protection of the lives of the miners in the County of Schuylkill." Under its provisions the governor appointed a properly qualified person for the office of inspector of the coal mines of Schuylkill County. The appointment was for three years. The salary was fixed at three thousand dollars, and was paid by the State treasurer. The inspector made his reports to the governor. In the following year an act was approved on March 3, 1870, P. L. 3, entitled, "An Act providing for the health and safety of persons employed in coal mines." Under its provisions the governor was authorized to appoint inspectors for five years, for the Counties of Luzerne and Carbon. Their salary was fixed at three thou-

sand dollars, to be paid by the State treasurer, and the inspectors were required to make annual reports to the governor. That act also changed the local Act of Schuylkill County, just referred to, and provided for the appointment of three inspectors of mines for the Counties of Schuylkill, Dauphin, Northumberland and Columbia. Their salaries were paid by the State treasurer, and they were required to report to the governor. These two laws and subsequent local laws were merged into or repealed by an act entitled, "An Act to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania and for the protection and preservation of property connected therewith," "approved June 2, 1891, P. L. 176." In the title of this act it is indicated that this law concerns mines of Pennsylvania. Inspectors of mines were appointed by the governor under its provisions until 1901, when the office became elective by virtue of an act approved June 8, 1901, P. L. 535. Inspectors of mines are now, and always have been paid by the State treasurer. They are "under the direction of the chief of the department of mines" in this Commonwealth, who assigns districts to them in their respective counties in which they are elected. They are elected by the qualified electors of inspection districts, and there are eight such districts. The County of Schuylkill constitutes the fourth district, and in it four inspectors are elected. We may contrast this fourth district with the eighth district, consisting of the Counties of Susquehanna, Wayne and Sullivan, in which three counties but one inspector is elected: Act of May 6, 1911, P. L. 120. Surely, no one could successfully contend that the inspector of the eighth district is a county officer, for he could not be such consistently with the constitutional provision that "no person shall be appointed to any office within any county who shall not have been a citizen and inhabitant therein one year next before his appointment, if the county shall have been so long created," (Constitution,

Article XIV, Section 3) because it would be physically impossible for one and the same person to be an inhabitant in Susquehanna, Wayne and Sullivan Counties during the same year next before his appointment. Residence is not a qualification for appointment or election to the office of inspector of mines. "The person so elected must be a citizen, and shall have attained the age of thirty years. He must have a knowledge of the different systems of working coal mines, and he must produce satisfactory evidence to the board of examiners of having had at least five years' practical experience in anthracite coal mines of Pennsylvania. He must have had experience in coal mines where noxious and explosive gases are involved." Act of June 8, 1901, 535. He need not be an inhabitant of the county, but no one can become a candidate for election until he has filed "with the county commissioners a certificate from the mine examining board" and "setting forth the fact of the applicant's having passed a successful examination."

"When an inspector has not enough work or duty to perform in his own inspection district, then it shall be the right of the chief of the department of mines to assign said inspector to work or duty in another adjoining district or territory, wherein the services of said inspector are necessary": Act of May 5, 1911, P. L. 120.

The seventh section of the Act of 1911 says: "The qualified electors of the several inspection districts mentioned in this act shall elect, respectively, the following number of qualified persons to act as mine inspectors of this Commonwealth," and it authorizes the court of this county to appoint a board of examiners to examine persons desiring to become candidates for the office in the Counties of Schuylkill, Columbia, Northumberland and Dauphin. Why should the judges of Schuylkill County attend to the affairs of Columbia, Northumberland and Dauphin Counties if such matters are affairs of those counties?

The fifteenth article of the Act of 1891 requires "any

of the courts of law or equity having jurisdiction," etc., to prohibit, by injunction, certain conduct "upon application of the inspector of mines of the proper district, acting in behalf of the Commonwealth." The seventh section of the Act of 1901 directs that "at the next general election in November, the qualified voters of the first inspection district shall elect five qualified persons to act as mine inspectors of this Commonwealth;...... the qualified electors of the fourth inspection district shall elect four qualified persons to act as mine inspectors of this Commonwealth," etc. The Act of 1901, Section 2, which created eight inspection districts, made the

"Seventh. That part of the Schuylkill coal field in Schuylkill County lying north of the Broad Mountain and west of a meridian line through the center of the Borough of Girardville, together with Columbia, Northumberland and Dauphin Counties," and the

"Eighth. All that part of the Schuylkill coal fields in Schuylkill County lying south of the Mahanoy Valley, and the County of Lebanon."

Mine inspectors are required annually to make report to the secretary of internal affairs.

To cite the foregoing provisions of the statutes is to present the matter so clearly that it is impossible to conclude otherwise than that mine inspectors, or inspectors of mines, are officers of the State, and the law distinctly provides for their election at the general election. When that law was enacted we had a municipal election annually in February and a general election in November, but the Constitution has since then been so changed that the municipal elections are now held in the month of November in the odd numbered years, and the general elections are held in the even numbered years. Prior to changing the Constitution, county officers were elected at the general election, but now they are elected at the municipal election, because it is so provided by the Constitution. We are very sure that mine inspectors are State officers, and that, in accordance with the Constitu-

tion and the law, they must be elected at the general elections. But can this question be raised under Carey's petition and under the provisions of the Act of July 12, 1913, P. L. 719, Section 6.

The language of the 8th section of the Act of 1913 is:

"No nominating petition shall be refused or set aside except for—

"(a) Material error or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or

"(b) Material alterations made after signing, without the consent of the signers; or

"(c) Want of a sufficient number of genuine signatures of persons qualified, with respect to age, sex, residence, and citizenship, to be electors."

If the question can be raised at all, it must be under paragraph (a).

The petition of Mr. Lamb is complete in that it conforms to every requirement of the law respecting signatures, residences, occupations, dates of signing, affidavits, etc., to the extent of filling every blank space on the printed petition, but its avowed purpose is to have his name printed on the official ballot to be used at the fall primary for the year 1915. We consider this a material error or defect apparent on the face of the petition. It is material to the qualified voters of the fourth inspection district to nominate at the fall primaries persons for only such offices as the law provides shall be filled at the election to be held in November, 1915; and it is material to all taxpayers also that no expense be incurred in printing useless matter upon official ballots. As well might a candidate for governor or for the general assembly have his name printed on the official ballot for 1915. Were a petition for such a purpose presented to the county commissioners, they would surely refuse it. No one would be wiling to incur the expense of a mandamus proceeding to compel compliance with his request to file such a paper with the county commissioners.

The commissioners are bound to know that such petitions cannot be filed in their office.

Suppose Mr. Lamb's petition showed that all the signers thereto are resident of the City of Reading. Would that not be a material error or defect on the face of the petition? The petition would be complete in that every blank space would be regularly filled, but appearance is not to be our only guide in finding material errors or defects on the face of the petition. The substance must be considered, and we are bound to know the territorial limits of our jurisdiction. The county commissioners would surely reject a nomination paper which upon its face showed that the signers are all nonresidents. And the year is as important as any other matter required to make the petition complete. If that be erroneous, it is an apparent error, and it is erroneous to present a petition for the election of a State officer in an odd numbered year. Would the county commissioners accept for recording deeds, releases and other instruments properly sealed and acknowledged, just because holders of such papers presented them for recording? Certainly not. And why should they receive for filing a paper that belongs to the office of the secretary of the Commonwealth? There are two errors apparent on the face of the paper, viz: that the paper is presented in the wrong year, and that it was presented at the wrong place for filing.

Nor are we persuaded that M. A. Carey has no standing to ask us to set Mr. Lamb's petition aside. It may be said that his purpose is political, but that can make no difference, even though he be not a Republican, nor a candidate for the office, nor an employee in or about the anthracite coal mines in this county, nor interested more than any other citizen in the matter. All citizens and taxpayers qualified to vote at any election have an interest in a lawful ballot, and when the law is clear and free from doubt any qualified voter may present his petition to set aside a candidate's petition for a mani-

fest material error or defects apparent on the face thereof.

The court set aside the nomination petitions.

A. B. Lamb and P. C. Fenton appealed.

*Error assigned* was the order of the court.

*Arthur L. Shay,* with him *C. A. Snyder,* for appellants.

*Edmund D. Smith,* for appellee.

PER CURIAM, October 11, 1915:

Nothing can be added to the clear demonstration of the learned court below that the office of mine inspector, to which each of the appellants seeks an election this year, is a State office, to be voted for only in an even numbered year. There was therefore an error in each nomination paper apparent on its face, and the appellee, a qualified elector of the County of Schuylkill had a status, without regard to his own party affiliation, to ask the court to prevent any nomination at the primary election for this year by any political party for an office which cannot be filled by the electors until next year. Each appeal is dismissed at the cost of the appellant, and the order in each case is affirmed on the opinion of the court below setting aside Lamb's petition.