## Com. ex rel. Moses v. Dauphin County Commissioners.

*Election laws—Nominating petition—Defects ascertainable by examination — County commissioners — Right to reject nomination — "Independent Republican Party"—Acts of June 10, 1893, July 9, 1897, and July 9, 1919.*

1. The county commissioners to whom any nomination paper is brought are required by the Act of June 10, 1893, P. L. 419, and the amendments of July 9, 1897, P. L. 223, and July 9, 1919, P. L. 832, to examine the same for manifest defects, and where such defects appear the paper should not be filed. This examination is not limited to the detection of such defects as are apparent upon the face of the paper itself, but must include search for any failure to comply with the requirements of the Constitution and laws of the Commonwealth.

2. The county commissioners properly rejected a petition for the nomination of a candidate for office under the designation "Independent Republican Party" in a district where the "Republican" party had already regularly nominated candidates for the same office. The fact that the name "Independent Republican Party" had been regularly pre-empted without objection is immaterial.

Petition for mandamus. C. P. Dauphin Co., Sept. T., 1921, No. 237.

*J. Dress Pannell,* for relator.

*William H. Earnest,* County Solicitor, contra.

HARGEST, P. J., Oct. 24, 1921.—The relator presented his petition for mandamus, setting out that on Oct. 10, 1921, within the time prescribed by law, he presented to the defendants a nomination paper specifying that the Independent Republican Party or policy had nominated him for the office of Alderman of the 7th Ward of the City of Harrisburg, which nomination paper was signed by approximately seventy-five qualified electors of said ward, being more than the requisite number of signers prescribed by law; that each of said signers had added his or her place of residence, profession, business, occupation and the date of signing said petition, and that the same was accompanied by a certificate from the Prothonotary of Dauphin County, setting forth that the political appellation "Independent Republican" had been pre-empted in that office; that no objections to the said nomination paper have been made or filed in this court and with the county commissioners, but that the defendants had refused to file the said nomination paper.

The answer admits most of the allegations of the petition, but says: "That the commissioners refuse to file said nomination petition on the ground that it is manifestly defective, because the appellation of 'Independent Republican' is nearly akin to the appellation 'Republican,' a political appellation used by a political party entitled to have a name and place on the ballot, and the respondents are advised and aver that they have no legal right to print on the ballot the name of the petitioner, William S. Moses, as a candidate of the 'Independent Republican Party' for Alderman of the 7th Ward of the City of Harrisburg."

Section 6 of the Act of June 10, 1893, P. L. 419, as amended by the Act of July 9, 1897, P. L. 223, and further amended by the Act of July 9, 1919, P. L.

1 D. & C.

832, provides, in part, that "It shall be the duty of the officer or officers to whom any nomination paper is brought for the purpose of filing, to examine the said paper, and if it lack sufficient signatures or be otherwise manifestly defective, it shall not be filed; but the action of said officer or officers in refusing to receive such paper may be reviewed by the Court of Common Pleas of the county, upon an application for mandamus to compel its reception as of the date when it was brought to the office. All nomination papers which have been filed shall be deemed to be valid, unless objections thereto are duly made by writing filed in the Court of Common Pleas of the county in which the paper objected to has been filed."

The Act of July 9, 1919, P. L. 855, amending section 3 of the Act of June 10, 1893, P. L. 419, as amended by the Act of July 9, 1897, P. L. 223, provides that five electors by an affidavit properly filed may adopt "a certain political appellation to designate their policy, subject to the limitations of this act regarding the selection of names;" and section 2 of the Act of July 9, 1897, P. L. 223, amending section 4 of the Act of June 10, 1893, P. L. 419, provides: "That no words shall be used in any nomination papers to describe or designate the party or policy, or political appellation, represented by the candidate named in such nomination papers as aforesaid, identical with the words used for the like purpose in certificates of nominations made by a convention of delegates or primary meeting of electors or caucus held under the rules of a political party . . . which at the last preceding election polled 2 per centum of the largest vote cast."

The word "Republican" used in the nomination paper in question is identical with the appellation "Republican" used by a political party entitled to have a name and place on the ballot. The question, therefore, is, whether, in the absence of any objections to the pre-emption of the name "Independent Republican Party" or to the nomination paper in question, the county commissioners may reject and refuse to file this paper because of the identity of the name.

"It is the duty of the Secretary of the Commonwealth to receive and file every certificate of nomination or nomination paper that is legal on its face. He has no authority to hear and determine controverted questions of law:" Com. ex rel. Goyne v. McAfee, 9 Dauphin Co. Reps. 183.

The same duty devolves upon the county commissioners with reference to certificates of nomination or nomination papers presented to them for filing. So it has been held that where two certificates purport to come from the same political party, each representing a faction, and each faction claiming the right to use the party name, the Secretary of the Commonwealth cannot determine which certificate is the proper one, but must receive both: Com. ex rel. Leonard v. Reeder, 5 Dist. R. 600.

"The Secretary of the Commonwealth cannot refuse to receive and file a nomination paper because, in his opinion, it contained a nomination for the office of senator for a district which did not exist:" Com. ex rel. Goyne v. McAfee, 9 Dauphin Co. Reps. 183.

It is settled by many decisions of this court, construing the provisions of the law above quoted, that the Secretary of the Commonwealth may reject a certificate of nomination or nomination paper only when the defects are ascertainable "by examination, computation and inspection," and that "he deals wholly with obvious defects:" Com. ex rel. Montfort v. Fuller, 7 Dauphin Co. Reps. 263.

Is the use of the word "Republican" in this instance, which is forbidden by the statute, such an obvious defect, ascertainable by examination of the paper

itself, as to justify the commissioners in refusing to file the paper? In the case of Lamb's and Fenton's Nomination Petitions, 251 Pa. 102, nomination petitions were filed in 1915 for the office of mine inspector when such office could only be voted for in even-numbered years. A petition was filed, praying the court to set aside the nomination on the ground that no such nomination could be legally made at the fall primary in 1915. In discussing the question the court below, whose opinion is affirmed in a *per curiam*, said: "The petition of Mr. Lamb is complete in that it conforms to every requirement of the law respecting signatures, residences, occupations, dates of signing, affidavits, etc., to the extent of filling every blank space on the printed petition, but its avowed purpose is to have his name printed on the official ballot to be used at the fall primary for the year 1915. We consider this a material error or defect apparent on the face of the petition. It is material to the qualified voters of the fourth inspection district to nominate at the fall primaries persons for only such offices as the law provides shall be filled at the election to be held in November, 1915; and it is material to all taxpayers also that no expense be incurred in printing useless matter upon official ballots. As well might a candidate for governor or for the general assembly have his name printed on the official ballot for 1915. Were a petition for such a purpose presented to the county commissioners, they would surely refuse it. No one would be willing to incur the expense of a mandamus proceeding to compel compliance with his request to file such a paper with the county commissioners. The commissioners are bound to know that such petitions cannot be filed in their office."

We think that this language is pertinent here. The county commissioners were required to inspect this petition for defects appearing upon its face. Upon such inspection it disclosed the use of the word "Republican," which the law distinctly prohibits, because it is well known there is a party of that appellation which makes nominations, and had in this instance made a nomination for this same office. Such a defect can be ascertained from an inspection of the paper as readily as a failure to have the requisite number of signatures. It is no answer to say that the county commissioners would have to look elsewhere to ascertain whether another party had the right to use the word "Republican," and could not ascertain that fact from an inspection of the paper itself. They have to look elsewhere to ascertain the required number of signatures. In each case they would have recourse to the records of their own office. The same objection might have been made in the case of Lamb's and Fenton's Nomination Petitions, 251 Pa. 102, where it would have been necessary to look elsewhere than on the petitions themselves to ascertain when mine inspectors are to be elected. In that case it was necessary to look at the Constitution and election laws, which plainly disclosed no election for mine inspectors in 1915. In this case it is necessary to look at the election law, which just as plainly discloses that the use of the word "Republican" in this petition is illegal; and if the county commissioners, in the language of the court below in the case cited, were "bound to know that such a petition cannot be filed in their office," they would be no less bound in a case such as this.

We do not think that any of the cases of this court to which we have been referred conflict with our conclusion. Great stress has been laid by counsel for the petitioner on the case of Com. ex rel. Montfort v. Fuller, 7 Dauphin Co. Reps. 263. In that case the Prohibition Party had made a nomination for the office of judge, but had not made a nomination for the office of representative in the general assembly. Subsequently some electors presented a nom-

1 D. & C.

ination paper, nominating a candidate for such representative, using the name of "Prohibition Party." The Secretary of the Commonwealth refused to file this nomination paper, whereupon a petition for mandamus was presented. This involved a controverted legal question, and the court decided that the Secretary of the Commonwealth had no right to settle that question; but this case involves no such controverted question, either of fact or law. In his discussion in the case of Com. ex rel. Montfort v. Fuller, 7 Dauphin Co. Reps. 263, 267, Judge Weiss says, with reference to the duty of the filing officer: "He is to look for defects arising from a lack of sufficient signatures to the nomination paper, or others arising from obvious non-compliance with statutory direction."

For these reasons, we conclude that the county commissioners were right in refusing to file the nomination paper. The petition for mandamus is, therefore, dismissed, at the cost of the petitioner.

From William Jenkins Wilcox, Harrisburg, Pa.