# CHARLESTON.

STATE *ex rel.* HATFIELD *v.* LOGAN COUNTY COURT *et al.*

Submitted September 3, 1924. Decided September 13, 1924.

1. ELECTIONS—*Election Precinct Exceeding 600 Voters, if Inside, and 550 Outside Municipality Must be Divided.*

   Under section 5, chapter 3, Barnes' Code 1923, as amended by chapter 25, Acts 1923, where the number of legal voters in an election precinct exceeds 600 if inside, and 550 if outside, an incorporated city or town, it is the mandatory duty of the county court to divide such precinct so as to reduce the number of legal voters to the maximum required by the statute. (p. 143).

   (Elections, 20 C. J. § 67).

2. SAME—*Duty to Divide Precinct Reducing Number of Voters to Statutory Maximum Extends to all Excesses, However Disclosed.*

   Such duty is not confined to cases wherein an excess of voters over the maximum allowed in a precinct is disclosed by the returns of the last preceding general election; it extends to all cases wherein the maximum is exceeded, and whether it appears from election returns, registration of the voters, or other proof. (p. 143).

   (Elections, 20 C. J. § 67 [1926 Anno]).

3. MANDAMUS—*When Mandamus will Lie to Compel Division of Precinct for Excess of Voters on Election Returns.*

   Where the returns of the last general election show a greater number of electors in a precinct than the maximum allowed by law, it is the duty of the county court to divide the precinct within 60 days from the date of the election, and upon its failure to do so within that period, it may be compelled to perform its duty in that respect by mandamus. (p. 143).

   (Mandamus, 26 Cyc, p. 271 [1926 Anno]).

4.  ELECTIONS—*County Court Has Discretion to Divide Precinct Shown by Registration to Contain Voters in Excess of Statutory Maximum.*

However, where the returns of the last general election do not show, but a registration of the voters in an election precinct does show, more than the maximum allowed by law, the county court has a discretion as to the time it will divide the precinct, which discretion continues to the 90 days' period mentioned in section 6, c. 3, Barnes' Code 1923, during which 90 days' period it may not on its own motion divide the precinct. (p. 143).

(Elections, 20 C. J. § 67).

5.  MANDAMUS—*County Court May be Compelled to Divide Precinct Within 90 Days Preceding General Election by Mandamus.*

But if the county court fail to divide such precinct when it has a discretion to divide it, it may, notwithstanding section 6, c. 3 of the Code, within the 90 days immediately preceding a general election, be compelled by mandamus to make such division, where there is ample time to make it and it will not result in public confusion. (p. 147).

(Mandamus, 26 Cyc, p. 271 [1926 Anno]).

NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Original mandamus by the State, on the relation of Coleman Hatfield, against the County Court of Logan County and others.

*Writ awarded.*

*England, Hager & Hatfield,* for relator.
*Charles L. Estep,* and *W. E. R. Byrne,* for respondents.

MEREDITH, PRESIDENT:

The petitioner, Coleman Hatfield, a legal voter in Logan County, seeks a peremptory writ of mandamus to compel the county court of that county to divide certain voting precincts so as to reduce the number of voters in each to the number fixed by law.

He avers that the registration made prior to the primary election held on May 27th last shows that in Triadelphia District the following precincts have the following numbers of voters:

Precinct No. 6, at Amherstdale, 1068
Precinct No. 9, at Lorado,      573
Precinct No. 11, at Mallory,    560
Precinct No. 12, at Landville,  704 .

And in Logan District as follows:

Precinct No. 1,      628
Precinct No. 4,      713
Precinct No. 6,     1042
Precinct No. 7,      565
Precinct No. 10,     692
Precinct No. 12,    1014
Precinct No. 15,     607
Precinct No. 23,     609
Precinct No. 28,     624
Precinct No. 29,     906

And that all of the said precincts in both districts are outside any incorporated city or town, except precincts Nos. 4 and 12 in Logan District, which latter precincts are inside the incorporated city of Logan.

The record also shows that petitioner, on July 23, 1924, caused to be served upon the respondents a written request to divide the precincts, and again on August 4, 1924, petitioned the court to make such division, calling the court's attention to the prior registration of voters; but the court denied the relief asked.

The respondents answered. They do not deny that there are in the several voting precincts the respective numbers of registered voters as stated in the petition, but they say and show that at the last general election held in November, 1922, and at the last primary election, held May 27, 1924, the total number of votes cast at each of the several precincts was below the maximum number allowed by law for each precinct, and they therefore say there is no mandatory duty on the county court to divide said precincts. In other words, they say that whether there is a legal duty to divide the precincts depends upon the number of votes cast at the last preceding general election, and not at all upon the actual number of legal voters therein.

The former statute, section 5, chapter 3, Barnes' Code, 1923, reads as follows:

"The county court of each county in this state shall, at their first session after the taking effect of this act, divide the magisterial districts of their respective counties into election precincts, number the same, establish the boundaries thereof, and designate at least one place of holding elections in each magisterial district. Every magisterial district, in which only one place of holding elections is designated, shall constitute a precinct. There shall be but one voting place in a precinct, which shall be established as near as possible at the place most convenient for the voters of the precinct, each precinct shall contain as nearly as practicable, two hundred electors, based on the number of votes cast at the last election for presidential electors; but no precinct shall contain more than two hundred and fifty electors. If at any election hereafter, two hundred and fifty or more votes shall be cast at any voting place, it shall be the duty of the county court to, and it shall at its next regular meeting after such election, divide such precinct as equally as possible, so that the new precinct formed thereof or in part thereof, shall contain two hundred electors, as nearly as practicable; but no precinct shall contain more than two hundred and fifty electors. If such county court fail to act as herein directed, any qualified voter of the county may apply for writ of mandamus to compel a performance of this duty."

This statute was under consideration in *State ex rel. Deegan* v. *County Court,* 78 W. Va. 85, 88 S. E. 449. In that case application was made to this court for a writ requiring the county court of Logan County to divide certain precincts, numbers 1, 4, 5, 6 and 12 in Logan District, and numbers 2 and 3 in Triadelphia District. The application was made in March, 1916, so that the division might be made in time for the primary election to be held in the following June. It was urged by the respondent that because the county court could not then divide the precincts 90 days before the primary election, the date of which had been fixed, it could not be compelled to act, but we held that the section of the statute had no application to primary elec-

tions, but applied only to a final election at which officers are elected; and because the returns of the last general election showed that more than 250 votes were cast at precincts numbers 4, 6 and 12 in Logan District and precinct No. 2 in Triadelphia District, and the county court had failed to perform its mandatory duty to divide them, a peremptory writ was issued requiring them to do so. The court denied the writ as to precincts numbers 1 and 5 in Logan District and No. 3 in Triadelphia District. The returns of the last general election did not show that there had been cast more than 250 votes at each of these last three precincts, but it did appear from a list or enumeration of the legal voters in two of the precincts, and by an averment as to the other which was not denied, that each of these three precincts had more than 250 legal voters.

As to these three precincts the court held:

> "It is likewise the duty of the county court to divide any voting precinct in the county, which is shown by satisfactory proof to contain more than 250 legal voters, notwithstanding the returns of the last election showed fewer than 250 votes were cast therein. *But the county court has a reasonable discretion as to the time when a division of such precinct shall be made;* provided, however, the time be not extended so as to make a division impossible before the beginning of the ninety days next prior to a regular election."

This decision, therefore, covers two situations,—one where the vote cast at the last preceding general election, for the election of officers, exceeds 250 at any precinct, in which instance it is the duty of the county court to divide the precinct, under the former statute at the first regular session after such election; and the other, where the vote cast at such election does not show, but the registration list or other proof does show, that there are more than 250 legal voters in a precinct. The duty of the county court was held to be as mandatory in the latter instance as in the former; but because the county court had not exercised its discretion, this court not being in position to say in advance that it

would fail to discharge its plain duty to divide the three precincts prior to the beginning of the ninety days preceding the next general election, the writ was denied as to those three precincts. The county court had ample time to make the division between the date of the hearing here and the beginning of the ninety days period specified in section 6, chapter 3, Code, and we could not assume that it would not do so, but said that the county court could not postpone the division until it would be impossible for it to make it before the beginning of that period.

The statute was amended by chapter 25, Acts 1923, but the most material change was to increase the maximum number of votes to be allowed for a precinct,—600 if inside and 550 if outside an incorporated city or town. In the former statute the standard number was fixed at 200, and the maximum at 250, whether the precinct was inside or outside an incorporated city or town. Under the present statute, the standard number, as well as the maximum for precincts inside an incorporated city or town is 600; if outside, the standard number is 200, the maximum 550, and the minimum 100. But the total number is "based on the number of votes cast at the last general election"; under the former statute it was "based on the number of votes cast at the last election for presidential electors." But the maximum number is fixed by the statute, not by the election returns or otherwise. In the Deegan case we held that the maximum in any and every instance was 250 and this was the evident intent of the legislature, because the statute plainly says twice in the same section "but no precinct shall contain more than two hundred and fifty electors." We think the expression "based on" means "estimated on." This expression was first introduced into the statute by chapter 25, Acts 1893. Before that the statute required the county court to "establish at least one voting precinct in each magisterial district for every two hundred and fifty voters in said district *as shown* by the election of eighteeen hundred and fifty-eight or eighteen hundred and ninety, at whichever election the greatest number of votes were cast." Section 5, chapter 89, Acts 1891. By the change in the

statute it is manifest that the legislature did not mean to limit the county court to the election returns as its only means of ascertaining the number of electors residing in a precinct. It knew, as every one knows, that very seldom indeed do all the legal electors in a precinct vote at any election; that this vote varies at different elections, owing to a variety of circumstances, such as the public interest aroused, the condition of the weather on election day, or a number of other causes that might be mentioned which affect the number of votes cast. Knowing this, the legislature said that the county court should take the vote cast at the last general election at any precinct and estimate the number of electors residing in the precinct from the vote cast, and estimating the total number in the precinct from the vote cast, it should arrange the precincts so that the number in each should be as nearly as practicable the standard number, but in no event should it exceed the maximum. We do not think it was intended that the number should be ascertained in any one way, such as by the vote cast at the last general election. That might be done by actual count as in the Deegan case, or by a legal registration as in the present case. So it be made to appear by proof, whether by count, registration or by actual vote, that is sufficient to make it the mandatory duty of the county court to divide a precinct, if the number exceeds the maximum prescribed. Such was the holding in the Deegan case and we think it is right. We have said this much on this point because respondents' counsel have strenuously insisted that the Deegan case in that respect is wrong. It necessarily follows that the county court has failed to discharge its duty to make a proper division of each of the precincts, and the writ should be awarded unless respondent's other objection is valid.

It urges as a second ground that the division can not now be made because of the provision in section 6, chapter 3, Barnes' Code, 1923. That section provides:

> "The county court of any county may change the boundaries of any precinct within such county, or divide any precinct into two or more precincts, or consolidate two or more precincts into one, or change any place of holding elections,

whenever public convenience or the public good
may require it.  * * * * * * and provided, fur-
ther, that no such change, division or consolida-
tion shall be made by the county court within
ninety days next preceding an election.''

It is now less than sixty days until the next general elec-
tion.  If the above provision applies in the present instance,
then the county court could not divide the precincts with-
out violating the statute, and of course we could not properly
compel the county court to violate the law.  But does it
apply here?  We held that where there are more electors
in a precinct than the maximum allowed by the statute,
and this is shown by the election returns at the last general
election, the county court could be compelled to divide the
precinct, upon the application of a voter, where the court
has failed to make the division at its first regular term
following the election; but that where it was shown, not by
election returns, but by actual enumeration of the voters,
that the maximum was exceeded in any precinct, the county
court had a discretion as to the time it should make the
division, provided it exercised it before the beginning of
the ninety days next preceding an election, and that during
this discretionary period mandamus would not lie to compel
it to perform its duty, unless, of course, it should appear that
the court intended to refuse performance.  *Deegan* v. *County
Court, supra.*  It if did not so appear, the county court
could not be said to be in default until the last day im-
mediately preceding the beginning of the ninety days.  There-
fore, during the whole of the time the county court would
have uncontrollable discretion in the matter, because it could
enter an order making the division at any time prior to
the beginning of the ninety days.  If that be so, and we have
no doubt about it, then the court could not be compelled
to divide any precinct where the legal maximum is exceeded,
if it is not shown by the preceding election returns, unless
the court could be compelled to do it at some time during
the ninety days.  And yet we said in the Deegan case that
the duty to make the division is mandatory, if it is man-
datory the court can be compelled to perform it.  We must

necessarily hold that the duty is mandatory and that the county court can legally perform its duty under the mandate of this court, even though it be done within ninety days of the next general election. Of course, this court would not require it if it were so close to the general election that it might result in confusion; but we believe there is ample time in the present instance in which to make the division of the precincts in accordance with the statute, and then to give the one month's notice as required by section 6.

In order to provide for a proper registration of the voters in the precincts as they are to be rearranged, or new precincts that may be created, it will also be necessary for the county court to appoint registrars and see that the voters are properly registered.

The court has expressed a willingness to divide the precincts, if it has the right to do so. It could not do so on its own motion, since that time has passed; but it can be required to do so by court mandate. *State ex rel. Heironimus* v. *Town of Davis,* 76 W. Va. 587, 85 S. E. 779; *State ex rel. Simon* v. *Heatherly,* 96 W. Va. 685, 123 S. E. 795; *Stafford* v. *Shepherd,* 57 W. Va. 84, 50 S. E. 1016.

Therefore, the peremptory writ will issue requiring the members and president of the county court to convene, if they be not now in session, and forthwith to take all necessary and proper steps to change the boundaries of said precincts, or divide them, or consolidate them in such manner that the precincts so changed or the new precincts so created shall not have more than 600 electors therein, if they be inside an incorporated city or town, and if outside not more than 550 nor less than 100 electors therein; to enter the proper orders in relation thereto, and to publish and post the notices thereof as provided by law, so that its action in the premises will in all respects be valid; and likewise to cause the legal voters residing in said precincts as so changed or created to be duly registered in ample time for the next general election.

*Writ awarded.*