## Com. ex rel. Meyers v. King, Secretary of the Commonwealth.

*Election laws—Nomination of candidates—Vacancy—Substituted nominations—Acts of July 9, 1897, Feb. 17, 1906, July 12, 1913, and July 9, 1919.*

1. Where no nomination has been made by a political party at a primary election when such nomination could have been made, no vacancy exists, and thereafter no substituted nomination can be made by a nomination paper.

2. Where a party has failed to place in nomination a person as its candidate at a primary election, and such failure appears, as it must, clearly upon the records of the Secretary of the Commonwealth, the Secretary is not bound to receive and file a substituted nomination paper as if a vacancy in fact existed.

3. In refusing to accept such paper, the Secretary is acting within the scope of the authority conferred upon him by section 6 of the Act of June 10, 1893, P. L. 419, as amended by the Act of July 9, 1897, P. L. 223, and further amended by the Act of July 9, 1919, P. L. 832.

4. Vacancies which may be filled in accordance with party rules are the vacancies for which provision is made in the Act of June 10, 1893, P. L. 419, which can only occur "in the case of death or withdrawal of any candidate nominated" at the primary election.

Mandamus to compel Secretary of the Commonwealth to receive and file substituted nomination paper. C. P. Dauphin Co., Commonwealth Docket, 1924, No. 71.

*J. Dress Pannell* and *Michael E. Stroup,* for plaintiff.

*George W. Woodruff,* Attorney-General, and *James O. Campbell,* Deputy Attorney-General, for defendants.

WICKERSHAM, J., Oct. 11, 1924.—The petition of the plaintiff states his citizenship; that on Sept. 19, 1924, the Progressive Party in and for the State of Pennsylvania, through its duly authorized and regularly constituted representative, presented to the defendant, the Secretary of the Commonwealth, for the purpose of filing in the office thereof, in conformity to law, a substituted nomination paper, reciting that a vacancy has existed after the primaries held pursuant to the act of assembly, on April 22, 1924, on the ticket of the Progressive Party aforesaid, for the office of Representative in Congress from the Eighteenth Congressional District of the State of Pennsylvania; that the State Executive Committee, by due action of the State Committee of the Progressive Party, was authorized and empowered to fill any vacancies happening or existing after the date of the primary on the ticket of the said party, *inter alia,* for the office of Representative in Congress; that said Executive Committee selected as the nominee of the Progressive Party for the office of Representative in Congress from the Eighteenth Congressional District of the State of Pennsylvania the plaintiff in this case; that the substituted nomination paper presented to the Secretary of the Commonwealth recited the necessary and prerequisite facts and authorization, and was duly prepared and executed in all respects in compliance with

and pursuant to the law; that no objections to the said substituted nomination paper have been made in writing duly filed in the Court of Common Pleas of Dauphin County; that the Progressive Party in and for the State of Pennsylvania, having polled the prerequisite number of votes as and when required by the law in such case made and provided, was entitled to nominate a candidate as a political party for the office of Representative in Congress from the Eighteenth Congressional District at the primaries held on April 22, 1924, but neglected so to do; that the Secretary of the Commonwealth refused to accept and file the said substituted nomination paper for the reason that no vacancy happened or existed after the date of the primary as aforesaid. The petitioner prayed that a writ of mandamus issue, commanding the defendant to answer and file said substituted nomination paper of Meredith Meyers as a candidate of the Progressive Party for the office of Representative in Congress from the Eighteenth Congressional District.

Upon receipt of this petition we issued an alternative writ of mandamus, returnable Friday, Oct. 3, 1924, at which time the case was heard.

The return of the defendant filed the day of the hearing admits the allegations in the first, second, fourth, fifth, sixth and seventh paragraphs of the plaintiff's petition. It states, in answer to the third paragraph, that the substituted nomination paper fails to set forth that the alleged meeting of the Progressive State Committee on June 6, 1924, was attended by a majority of the members-elect of said committee, and that the members attending said Progressive State Committee were duly elected. In answer to the eighth paragraph of plaintiff's petition, the defendant avers that the said substituted nomination paper is manifestly defective and that material error and defects are apparent on the face thereof.

"(a) It failed to set forth that the Executive Committee therein named was selected by a legally constituted meeting of a quorum of the qualified members of the State Committee of the Progressive Party.

"(b) There was no vacancy happening or existing after the date of the primaries held on April 22, 1924, for the nomination on the Progressive Party ticket for the office of Representative in Congress from the Eighteenth Congressional District of the State of Pennsylvania within the meaning of the act of assembly in such case made and provided, for the reason that the members of the Progessive Party in said congressional district failed to make any nomination for the said office at said primaries."

For further answer to said petition, the defendant avers that no certificates were issued to any members-elect of the State Committee of the said Progressive Party elected at the primary election of 1924; that only six persons qualified to hold said office were elected at said primaries, to wit: M. A. Rhodes, of Cambria County; Eber Cockley, of Fayette County; B. F. Gulick, of Fayette County; Walter Williams, of Luzerne County; Ed. Benjamin, of Luzerne County; John Doherty, of Philadelphia County.

The defendant further avers that he has reason to believe, and does believe, that no legally constituted meeting of the State Committee of said Progressive Party was held since the primary election of 1924, and, therefore, the said Eber Cockley, Mrs. M. Pfuhl Froehlich and Rev. W. R. Williams do not constitute the Executive Committee of the State Committee of the Progressive Party, and he calls upon the relator for proof. The return prays that the writ of alternative mandamus be dismissed and that he be discharged with his costs.

On Monday, Oct. 6, 1924, we entered judgment in favor of the defendant and dismissed the writ of alternative mandamus issued Oct. 3, 1924, at the cost of the relator, for the following reasons:

Commonwealth ex rel. Meyers v. King, Secretary of Commonwealth.

The plaintiff did not meet by proof or otherwise the allegations contained in the eighth and ninth paragraphs of the return, and, therefore, the first question raised in the brief of his counsel, to wit, "Has the Secretary of the Commonwealth the right, power or authority to refuse or decline to accept and file a substituted nomination paper, regular in form, in conformity to law and not 'manifestly defective,' because it purports to substitute a candidate for an office for which a political party in the State, under the law, had the right to nominations at a preceding primary?" does not clearly and accurately state the facts as they exist.

The State Committeemen of the Progressive Party must be elected at the primaries held in accordance with the provisions of the Act of 1913. It further appears that the State Committee of each political party may make such rules for the governing of such State Committee, not inconsistent with law, as it may deem expedient. All State Committeemen shall be elected by senatorial district. Each senatorial district shall be entitled to elect two members of the State Committee. . . . The State Committee thus elected shall meet for organization not later then the third Wednesday following their election. . . . The act further provides how vacancies upon a State Committee may be filled.

An examination of the nomination paper in evidence in this case does not show that the meeting of the Executive Committee, which assembled June 6th of the year 1924, was attended by a majority of the members-elect of said committee, nor does it show that the members attending said State Committee of the Progressive Party were duly elected; nor does it show that the Executive Committee therein named was selected by a legally constituted meeting of a quorum of the qualified members of the State Committee of the Progressive Party. It is equally essential that the substituted nomination paper should show on its face this jurisdictional information, as it is that a nomination paper must show on its face the complement of qualified signers.

The Progressive Party in Pennsylvania could have placed in nomination a person as its candidate for Representative in Congress from the Eighteenth Congressional District at the primaries held April 22, 1924. It failed to do so. This failure appeared clearly upon the records of the Secretary of the Commonwealth. Can it be successfully contended that if a nomination paper is filed to fill a vacancy which the Secretary of the Commonwealth knows does not exist, he is still bound to receive and file the nomination paper and place the name of the proposed candidate upon the ballot to be voted for? Suppose a candidate for Governor of Pennsylvania should file nomination papers regular upon their face, requesting that the said nomination papers be received and filed, and that his name be placed upon the ballot as a candidate for governor in a year and at a time when an election for governor could not be held, and when there was no vacancy in the office, could it be contended that, with that knowledge appearing upon the records of his office, the Secretary of the Commonwealth would still be required to receive and file the nomination papers and place the name of the candidate upon the ticket to be balloted for at the ensuing election? To ask this question, it seems to us, is to answer it.

The language of the 8th section of the Act of July 12, 1913, P. L. 719, is, inter alia: "No nominating petition shall be refused or set aside except for— (a) Material errors or defects apparent on the face thereof, or on the face of the appended affidavits."

We think the pending question is raised under said paragraph (a) of the act. Questions have been raised in the return to which we have heretofore

158 DISTRICT AND COUNTY REPORTS. [6 D. & C.]

Commonwealth ex rel. Meyers *v.* King, Secretary of Commonwealth.

referred. The avowed purpose of the plaintiff is to have his name printed on the official ballot to be used at the general election in November, 1924. Aside from the defects in the paper itself, to which our attention is directed by the return, for which proof is demanded and not furnished, we think the question whether there is or is not a vacancy is a material matter for the Secretary of the Commonwealth to consider. It is a material error or defect apparent on the face of the petition; it is material to the qualified voters of the Eighteenth Congressional District to vote for only such persons whose names are regularly and lawfully upon the ballot; it is material also to all taxpayers that no expense be incurred in printing useless matter upon official ballots.

We are of the opinion, therefore, that it was the duty of the Secretary of the Commonwealth, in the first instance, to take cognizance of the fact that no vacancy "happened or existed" in the Progressive Party for the office of Representative in Congress from the Eighteenth Congressional District. We think he was acting within the scope of the authority conferred by section 6 of the Act of June 10, 1893, P. L. 419, as amended by the Act of July 9, 1897, P. L. 223, and further amended by the Act of July 9, 1919, P. L. 832, which provides in part that: "It shall be the duty of the officer or officers to whom any nomination paper is brought for the purpose of filing to examine the said paper, and if it lacks sufficient signatures, or be otherwise manifestly defective, it shall not be filed; but the action of said officer or officers in refusing to receive such paper may be reviewed by the Court of Common Pleas of the county upon an application for mandamus to compel its reception as of the date when it was brought to the office. All nomination papers which have been filed shall be deemed to be valid unless objections thereto are duly made by writing filed in the Court of Common Pleas of the county in which the paper objected to has been filed:" Lamb's and Fenton's Nomination Petitions, 251 Pa. 102; Com. ex rel. Moses *v.* Dauphin County Commissioners, 1 D. & C. 70-72.

This brings us to the second interrogatory of the plaintiff, to wit: "Does a vacancy exist after the date of a primary, within the meaning of the act of assembly, in a case where a political party of the State, under the law, having the right to make nominations at a primary, fails or neglects to make such a nomination?"

Section 12 of the Act of Feb. 17, 1906, P. L. 43, provides: "Vacancies happening or existing after the date of the primary may be filled in accordance with the party rules as is now or hereafter may be provided by law."

We find this exact language in section 17 of the Act of July 12, 1913, P. L. 737, and so the case turns on the meaning of the words "happening or existing after the date of the primary."

The Uniform Primaries Act of 1913, from which we have just quoted, provides, in section 1: "That hereafter all candidates of political parties as herein defined, . . . for the office of Representative in Congress . . . and State Committeemen, shall be elected at primaries held in accordance with the provisions of this act and in no other manner."

It will be interesting to consider the purposes for which the Uniform Primaries Acts of 1906 and 1913 were enacted. In Com. *v.* Blankenburg, 218 Pa. 339, it was said by Mr. Chief Justice Mitchell, beginning at page 340:

"The Act of Feb. 17, 1906, P. L. 36, is an enactment to systematize, regulate and put under control of positive law party nominations for public office. It is the latest of a series of statutes extending the direct and immediate control of law over methods and details of the exercise of the elective franchise which previously had been left in the unrestricted discretion and control

of individuals or party managers. Under the earlier system, ballots were prepared by individuals or party officers in any form they desired; nominations were made by party machinery, usually conventions, under party rules and at irregular dates. Justly or unjustly, these steps, which practically controlled nominations and elections, were exposed to the suspicion of manipulation, not for convenience of party voters alone, but for undue advantage to individuals and party cliques.

"The Act of 1906 was passed to put an end to this system. Its first requirement is uniformity throughout the State, and in the 1st section it is enacted that it shall be known as the Uniform Primaries Act."

Discussing the question of the necessity that notice be given as required by the Uniform Primaries Act of 1906, the learned Chief Justice goes on to say, on page 342:

"If the secretary may think seven weeks preceding the primary early enough for notice, and the county commissioners think two weeks after receipt of notice early enough to begin publication, there would be confusion at once, and who is to decide? But the conclusive objection is that this construction would restore in large measure the practical individual and party control of the whole subject, which was the obnoxious feature of the previous system the act was intended to take away. What is reasonable time, as already said, is matter on which opinions may fairly differ, and to settle all questions on that subject, the law itself fixes reasonable time and its provisions are mandatory.

"If there were any doubt of this on the general construction of the act, the provision of clause 3 of section 2 would effectually settle it. 'No . . . candidates for the public offices herein specified (shall) be nominated in any other manner than as set forth in this act.' The principal object of the act was to break up 'snap conventions' and other devices for unfair ends, under the old system, and one of its principal means of so doing was to enforce uniformity of time as well as methods. Its provisions for that purpose are mandatory.

"It is not intended to express any opinion on the consequences of an omission or imperfect execution, accidental or intentional, of any of the prescribed steps or the means of remedy in such case. It will be time enough to consider them if occasion should unfortunately arise.

"The foregoing relates to the ordinary and regular mode, under section 3 of the act, of making nominations where the vacancies are known in advance in the usual time. Other vacancies 'happening or existing after the date of the primary' are to be filled, under section 12, 'in accordance with the party rules as is now or hereafter may be provided by law.'"

It is contended with great earnestness by counsel for the plaintiff that the words "happening and existing" refer to any present vacancy in the office of Representative in Congress from the Eighteenth Congressional District, and that it can make no difference whatever when the vacancy occurred. With this contention we are unable to agree. In the language of Chief Justice Mitchell, "it would restore in large measure the practical individual and party control of the whole subject, which was the obnoxious feature of the previous system the act was intended to take away."

When do vacancies "happen or exist" which may be filled . . . as is now or may hereafter be provided by law? We find the answer to this question in the hereinafter quoted Act of 1893. Our attention has not been directed to any other provision of the law bearing directly upon this question. Under the old party convention system, vacancies sometimes occurred. In order to supply a remedy for this condition of affairs, section 11 of the Act of June 10,

1893, P. L. 419-424, entitled "An act to regulate the nomination and election of public officecrs," etc., under authority of which it is sought to file the substituted nomination paper in the pending proceedings, provided: "In case of the death or withdrawal of any candidate nominated as herein provided, the party convention, primary meeting, caucus, or board, or the citizens who nominated such candidate, may nominate a substitute in his place by filing in the proper office at any time before the day of election a nomination certificate or paper which shall conform to all the requirements of this act in regard to original certificates or papers."

The section goes on to provide that this nomination may also be made by an executive committee, if so authorized by the convention so to act.

It is perfectly apparent, therefore, that the vacancies happening or existing after the date of the primary which may be filled in accordance with party rules, as is now or may hereafter be provided for by law, are the vacancies for which provision is made in the above quoted Act of 1893, which can only occur "in the case of death or withdrawal of any candidate nominated" at the primary election. No other cause of vacancy has been provided for by law.

The Uniform Primaries Acts of 1906 and 1913 were passed to abolish the method of nominating candidates for office by party conventions and party committees theretofore in vogue and to substitute a method for all nominations and for all political parties at primaries to be held at the same time, at which all members of the respective parties should have an opportunity to vote, as appears so clearly in the case of Com. v. Blankenburg, from which we have quoted. The general tenor of the act shows the intent of the legislature to be that all nominations must be made at these primaries by the vote of the party members. In order that this intent might be understood beyond peradventure of doubt, the words "and in no other manner" were added in the 1st section of the Act of 1913. If no nomination is made when a nomination could have been made at the primary election, then no vacancy can happen or exist under the law. Any other construction would defeat one of the main purpose of the Primaries Act. To permit party members to fill vacancies through party committees after the primaries, where such vacancies occur because of the failure of party members to make nominations, would open the door to a connivance between party leaders with a view to discouraging and omitting the making of nominations at the primaries, in order that they may be made by party committees in the old way.

We were not impressed by the contention at the oral argument that the County Commissioners of Huntingdon County, one of the counties comprising the Eighteenth Congressional District, had failed to print ballots for the Progressive Party at the primary election of 1924. This contention is not set forth in the petition filed requesting the alternative writ of mandamus; nor is there any suggestion or hint that the Progressive Party requested the County Commissioners of Huntingdon County to print primary ballots for the Progressive Party at the primary election of 1924. The Eighteenth Congressional District comprises the Counties of Franklin, Fulton, Huntingdon, Juniata, Mifflin, Perry, Union and Snyder, and there is no allegation that ballots for the Progressive Party were not duly furnished by the commissioners in the counties other than Huntingdon.

Section 9 of the Uniform Primaries Act of 1913, on page 731, requires the county commissioners to have on file in their office on and after the Wednesday preceding the primaries, open to public inspection, forms of the ballot, with the names and such statements and notations as may be required by the provisions of this act printed thereon, which shall be used in each election district

within such county. The manifest purpose of this legislation was to enable persons interested to examine the ballots prepared and to take notice that all preliminary steps to enable them to select their party candidates have been complied with. It is not suggested that the members of the Progressive Party in Huntingdon County informed themselves as to whether or not these ballots were printed. If they had done so and found they were not ready, mandamus proceedings could have been instituted.

For the reasons herein stated, we think we reached a correct conclusion in the order which we made dismissing the writ of alternative mandamus on Oct. 6, 1924.                         From George R. Barnett, Harrisburg, Pa.