## Korb v. Fox, County Judge.

(Decided July 25, 1928. Filed September 25, 1928.)

### Petition for Temporary Injunction.

1. Elections.—On plaintiff's petition to require the defendant as judge of a county court to set aside an order dividing certain oversized voting precincts of the county and city and to redistrict them

to conform to provisions of Ky. Stats., secs. 1443, 1444, where defendant answered pleading that he made no orders changing precinct boundary after the June term of county court as provided by Ky. Stats., sec. 1444, and consequently the circuit court was without jurisdiction to entertain motion, held that he may be compelled to enter nunc pro tunc order redistricting precincts, though term had expired.

2. Elections.—County judge may be compelled by injunction to set aside order dividing certain oversized voting precincts and to redistrict them to conform to Ky. Stats., secs. 1443, 1444, which provide that judge "may" change the boundaries of such precinct, since, as power is given county judge for benefit of public when public's rights are affected it becomes his duty to act on its behalf, the permissive word may then becoming imperative

3. Mandamus.—Where judge was given discretion, under Ky. Stats., secs. 1443, 1444, to make county and city voting precincts conform as nearly as practicable to 300 voters in each one, on petition to require him to redistrict such precinct, it being presumed that he has discharged his duty, unless it appears that he has abused discretion, a mandatory injunction is unauthorized.

4. Elections.—Where Ky. Stats., secs. 1443, 1444, provides that voting precincts should conform as nearly as possible so that there should be not more than 350 voters in each one, on plaintiff's petition to require county judge to redistrict precincts, held that a precinct in which fewer than 200 votes have been polled at each of elections during preceding 4 years is prima facie an undersized precinct, proof of which imposes upon those claiming otherwise burden of proving contrary, and when it is shown a number are contiguous, a prima facie presumption arises that county judge, impowered under Ky. Stats., secs. 1443, 1444, has abused his discretion in not effecting a consolidation.

OPINION OF THE COURT BY JUDGE McCANDLESS—Refusing injunction.

Plaintiff, a voter and taxpayer of Louisville, Jefferson county, Ky., in his petition and on motion duly entered before the chancellor, sought a temporary injunction requiring the defendant as judge of the Jefferson county court to set aside an order entered in that court on the 25th of June, 1928, dividing certain oversized voting precincts in the county and city, and further to require such defendant to redistrict the voting precincts in the county of Jefferson and city of Louisville so as to conform to the provisions of sections 1443, 1444, Ky. Statutes, in that each precinct shall contain as nearly as practicable 300 voters as shown by the votes cast in the last

presidential and gubernatorial elections, or in the alternative to consolidate undersized contiguous precincts in conformity with the statute.   He also filed as exhibits with the petition a detailed statement of the votes cast in said precincts at the elections mentioned, and a map of the city of Louisville showing in detail the various election precincts and some of the political subdivisions of the city, showing that out of a total of 759 precincts in a number of precincts there were polled in excess of 350 votes at such elections, and that in each of more than one-half of all the precincts fewer than 200 votes were polled at those elections.   It further appears from the map that large numbers of these undersized precincts are contiguous.

The defendant traversed the affirmative allegations of the petition, though the correctness of the exhibits seems admitted.   He also pleaded that under the statute he had no authority to make precinct changes after the close of the June term of the county court, and in a third paragraph pleaded certain affirmative defenses to which reference will be made later.

The chancellor refused to set aside the order dividing the oversized precincts except in certain instances not necessary to be mentioned, as no complaint is made of his order in that respect.   The chancellor was also of the opinion that under the statute the county judge could be compelled to divide the oversized precincts, but that such official is vested with full and final discretion in the matter of consolidating undersized precincts, and that the circuit court was without power to compel him to act in this matter.   Under this construction of the statute he sustained a demurrer to that part of the petition seeking the latter relief, and refused a temporary injunction for such relief.

The parties have appeared before me as a justice of the Court of Appeals on plaintiff's motion for a temporary injunction to be entered in the circuit court requiring the defendant by a proper order in the county court to further redistrict the voting precincts in the entire county and city or to consolidate the undersized precincts in conformity with the statute.   And on this motion the defendant, in addition to the matters upon which the chancellor ruled favorably to him, also insists upon several questions in which the chancellor's ruling was adverse to

him. The questions raised involved the construction of sections 1443, 1444, Ky. Statutes, which read as follows:

"The county court of each county in this state shall, on or before the August term of said court, divide the justices' districts of each of said counties into election precincts, and establish the name or number and boundaries of same, and place of voting in each precinct. There shall be but one voting place in a precinct. Each precinct shall contain, as nearly as practicable, three hundred voters, based on the number of votes cast at the last election for presidential electors; but no precinct shall contain more than three hundred and fifty voters. If at any election hereafter more than three hundred and fifty votes shall be cast at any voting place, it shall be the duty of the sheriff of the election in such precinct to report the same to the county court, which shall, at its next regular term, divide such precinct as equally as possible, so that the new precincts formed thereof shall each contain three hundred voters, as nearly as practicable. If for any good cause, an election cannot be held at the house appointed as the place of voting, the judges of the election may, on the morning of the election adjourn it to the most convenient place, after having publicly proclaimed the change and posted notice of the same on said house." Section 1443.

"The county court of any county may change the boundaries of any precinct within such county, or divide any precinct into two or more precincts, or consolidate two or more precincts into one, or change any place of holding elections whenever public convenience or the public good may require it: Provided, that no such change, division or consolidation shall be made after the June term of each court next preceding an election: And provided, further, that no such change, division, or consolidation shall be valid without giving due notice, at least one month before any election, by one publication in the newspaper published in said county having the largest circulation therein or by posters put up in four of the most public places in said precinct: And provided, further, that no precinct shall be enlarged so as to contain more than three hundred and fifty voters." Section 1444.

1.  The chancellor sustained a demurrer to the second paragraph of the answer in which defendant pleaded that he can make no orders changing precinct boundaries after the June term of the county court and consequently the circuit court is without jurisdiction to entertain this motion, and this ruling is called in question.  The statute (section 1444) provides:

> "That no such change, division or consolidation shall be made after the June term of each court next preceding an election."

The county judge is thus given until the end of the June term to enter appropriate orders and no taxpayer can interfere with his discretion unless in the meantime he does act or positively refuses to act.  Necessarily a suit must be filed subsequently, if at all.

In Ford v. Tincher, action No. 130665,[1] Jefferson circuit court, a manuscript opinion written by Judge Thomas and concurred in by all the members of this court, it was held that a taxpayer could maintain an action of this character and inferentially held that, in a meritorious cause of action, a nunc pro tunc order could be later entered granting the relief sought, provided it was made effective in time for the approaching election.  To the same effect, see State ex rel. Hatfield v. Logan County Court, 97 W. Va. 141, 124 S. E. 605.  And upon the right of citizens to sue in such cases, see State ex rel. Elfer v. Millsaps, 139 La. 250, 71 So. 499; In re Clark (Sup.) 137 N. Y. S. 218; Lamb's Nomination Petition, 251 Pa. 102, 96 A. 255.  The chancellor was clearly right in sustaining the demurrer to the second paragraph of the defendant's answer and in overruling the demurrer to the petition as a whole.

2.  Did the chancellor err in sustaining a demurrer to that part of the petition in which the specific relief sought in this motion was pleaded?  It will be observed that section 1443, supra, provides "that each precinct *shall* contain, as nearly as practicable, three hundred voters, . . . "  When more than three hundred and fifty votes are cast a report is made and the "county court . . . *shall* . . . divide (each) precinct as equally as possible, so that the new precincts formed thereof *shall* each contain three hundred voters as nearly as practicable." (Our italics).  It is clearly evident that

[1]Opinion not published in view of Court of Appeals Rule 12, sec. 2.

the Legislature intended each of these provisions to be mandatory. The ideal precinct should contain three hundred voters, based on the votes cast at preceding elections. But physical or geographical conditions, governmental subdivisions, and other matters may render exactness impracticable; hence the precincts were to be formed so as to contain as nearly as *practicable* three hundred voters. The Legislature further perceived that there would be shifts in population, and to meet such changed conditions section 1444, enacted at the same time, provided:

> "That the county court of any county *may* change the boundaries of any precinct within such county, or divide any precinct into two or more precincts, or consolidate two or more precincts into one . . . . whenever public convenience or the public good may require it."

The learned chancellor, as indicated supra, was of the opinion that, inasmuch as the word "may" and not the word "shall" was used in the latter section, it was intended to give the county judge unrestricted discretion in dealing with the matters therein mentioned; hence the order sustaining the demurrer. We cannot adopt such a narrow construction. Both sections, are part of the same act, and are to be construed together. While the act emphasizes the necessity of dividing oversized precincts, it also places similar emphasis on the number of voters the precinct shall contain; its manifest purpose being that the precincts shall be *established* and *maintained* according to the standard fixed in the act. Suppose six, ten or a dozen contiguous precincts were formed with three hundred voters each. And in the course of years all of these become depopulated so that the entire number contained not exceeding 300 voters and all lay within a proper geographical limit for one precinct. No one can dispute that the *public convenience* and *public good* would require a consolidation of such precincts. Power to do this is given the county judge for the benefit of the public, and, when the public's rights are thus affected, it becomes his *duty* to act on its behalf. And it is uniformly held that in such cases permissive words in a statute become imperative.

In Elam v. Salisbury, 180 Ky. 143, 202 S. W. 57, the question was raised as to the duty of the general council to assess certain property under section 3542, Ky. Stat-

utes, reading, "If for any reason, any property subject to taxation has not been listed, the council may assess same; (but it) may not be taxed or listed for more than five years." On this point the court said: .

"The point is made that because of the use of the word 'may,' the power conferred on the council is one which it may or may not exercise in its discretion. The general rule is that permissive words in respect to courts or officers are imperative in those cases in which the public or individuals have a right that the power so conferred be exercised. Sutherland's Statutory Construction, p. 597. In Supervisors v. U. S., 4 Wall. 435, 18 L. Ed. 419, the statute involved provided: 'The board of supervisors, . . . may, if deemed advisable, levy a special tax. . . '

"The court said: 'The conclusion to be deduced from the authorities is that where power is given to public officers, in the language of the acts before us, or in equivalent language, whenever the public interests or individual rights call for its exercise, the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his.' To the same effect is Gulf (Gallup) v. Smith (59 Conn. 354, 22 A. 334) 12 L. R. A. 355, and 22 Cyc. 590. We are therefore of the opinion that the statute in question imposes on the council the mandatory duty to assess any property subject to taxation that has not been listed.''

To the same effect, see the City of Covington v. Patterson, 191 Ky. 370, 230 S. W. 542. We think the chancellor was clearly in error in his ruling on this question.

3. Before a suit of this character is brought, the attention of the county judge should be called to the conditions of which complaint is made and he be given an opportunity to act upon them. But defendant cannot complain of this as he appointed an advisory committee at the April, 1928, term of court who reported to him at the June term concerning the conditions of the election precincts.

4. We have reached the conclusion, supra, that the petition stated a cause of action, but its affirmative allegations were controverted, and the crucial question is, does the record entitle the plaintiff to the relief sought?

In the first place, without detailing the evidence, it is clear that it is insufficient to authorize an injunction requiring the defendant to redistrict the entire county or to redistrict the entire city.

As to whether plaintiff is entitled to an injunction requiring the defendant to consolidate two or more of the undersized precincts into one precinct or any greater number than two into a fewer number of precincts presents a more difficult question. It must be borne in mind that, while it is the duty of the county judge to maintain the standard of precincts prescribed by the statute, he is given discretion to make them conform as *nearly as prac-ticable* to that standard. The presumption is that he has discharged his duty, and, unless it appears that he has abused his discretion, a mandatory injunction is unauthorized. In sparsely settled communities and in sections surrounded by geographical barriers, it might be impracticable if not impossible to establish a precinct containing approximately 300 voters. On the other hand, in cities and other thickly settled communities ordinarily this may be done. But, even in such localities, existing governmental subdivisions and geographical, physical, and other conditions, such as the size of the registration or a rapidly increasing population, may affect the size of the precinct. So that, without laying down any arbitrary rule, we have reached the conclusion that a precinct in which fewer than 200 votes have been polled at each of the elections during the preceding four years is prima facie an undersized precinct, and proof of this imposes upon those claiming otherwise the burden of proving the contrary. And when it is shown that there are a number of contiguous undersized precincts a prima facie presumption arises that the county judge has abused his discretion in not effecting a consolidation. But he should be permitted to show, if he can and so desires, that, on account of conditions such as indicated supra, it is impracticable to effect a change in some or all of the precincts. In this case the pleadings and exhibits used as evidence make out a prima facie case for plaintiff for the consolidation of a large number of precincts. However, defendant, in the third paragraph of the answer, alleged affirmatively the existence of a number of conflicting governmental subdivisions, which he alleged would be dismembered by a consolidation of precincts, and, as the chancellor sustained a demurrer to that part of plaintiff's petition stating grounds for consolidation, defend-

ant was not required to introduce proof on that question, though, if the demurrer had been overruled, he might have desired to do so. Under this state of the record we do not feel authorized to grant the temporary injunction prayed for, and for the present will refuse same without prejudice, but with instructions to the chancellor to overrule the demurrer to the petition and to permit the defendant to introduce evidence in accordance with the views stated supra, and then to determine the right of injunction as the facts may warrant.

5. We might make a passing reference to the first paragraph of section 1443, to-wit:

> "The county court of each county in this state shall, on or before the August term of said courts, divide the justices' districts of each of said counties into election precincts."

We think the chancellor rightly held that this referred to the first redistricting under the act and does not apply to subsequent August terms of the county court.

Chief Justice Clay and Justices Dietzman, and Willis sat with me in the hearing of this motion, and concur in the above opinion.